FILED

17 FEB -7 AM 11:11

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HART,<br><br>Plaintiff,<br><br>v.<br><br>SCOTT R. LARSON, SCOTT R. LARSON, P.C., DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 3:16-cv-01460-BEN-MDD<br><br>**ORDER:**<br><br>**(1) DENYING DEFENDANTS' SPECIAL MOTION TO STRIKE (ANTI-SLAPP)**<br><br>**(2) DENYING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS;**<br><br>**(3) GRANTING PLAINTIFF'S MOTION TO AMEND**<br><br>[Docket Nos. 6, 7, 24] |

Before the Court are the Special Motion to Strike (Anti-SLAPP)[1] and the Motion for Partial Judgment on the Pleadings filed by Defendants Scott Larson and Scott Larson,

---

[1] SLAPP is an acronym for "strategic lawsuit against public participation." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010); *see also* Cal. Code Civ. Proc. § 425.16.

1

P.C. (hereinafter, "Larson"), and the Motion to Amend Complaint filed by Plaintiff Hoyt Hart. (Docket Nos. 6, 7, 24.) The motions are fully briefed. The Court finds the motions suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, Defendants' Special Motion to Strike and Motion for Partial Judgment are **DENIED**, and Plaintiff's Motion to Amend is **GRANTED**.

## BACKGROUND[2]

In or around August 2014, Larson, a Colorado based attorney, contacted Plaintiff, a California based attorney, by telephone "to request local counsel assistance" with a case involving a substantial brain injury to a Colorado resident (the "Storm case"). (Compl. ¶ 5.) Larson indicated that "$5.8 Million had been offered from the latest mediation" with the Storm defendants, and that filing a lawsuit in California was necessary to "effectively prosecute the Storm claims." (*Id.*) Larson and Plaintiff agreed that Plaintiff would "file the lawsuit in San Diego Superior Court and work as California counsel on behalf of the Storm plaintiffs." (*Id.*) The parties further agreed that Plaintiff would receive, as compensation for his services, forty percent (40%) of "the attorney fees attributable to an award or settlement obtained in excess of $5.8 million, based on the contingency fee" agreement between Larson and the Storm plaintiffs. (*Id.*)

The day after their initial conversation, Larson telephoned Plaintiff and told him the Storm defendants "had just then raised their [settlement] offer to $8 million, and that [the Storm] plaintiffs would accept $10 million to settle their case. (*Id.*) Based on these representations, Plaintiff agreed to modify the original fee splitting agreement. Instead of forty percent (40%) of the attorney fees obtained in excess of $5.8 million, Plaintiff would receive forty-five percent (45%) of the attorney fees obtained in excess of $8

---

[2] The following overview of the facts are drawn from the allegations of Plaintiff's Complaint. The Court is not making findings of fact. The allegations relevant to each motion are detailed in analyzing the individual motions.

million. Thereafter, Plaintiff filed the Storm case[3] and spent over eighteen (18) months litigating it, which ultimately resolved in settlement for the Storm plaintiffs in excess of $10 million.

After Plaintiff began representing the Storm plaintiffs, Larson allegedly concealed from Plaintiff two settlement offers from the Storm Defendants: one for $6.3 million in October 2014, and one for $6.8 million in November 2014. Additionally, on May 18, 2015, Plaintiff attended a mediation in Larson's Denver office, which Larson and one of the Storm plaintiffs also attended. During the mediation, the Storm defendants offered $8 million to settle the case, and Plaintiff complained aloud to the mediator that the Storm defendants "was offering no more than had been offered nine months earlier." (Compl. ¶ 8.) Neither Larson nor the Storm plaintiff corrected Plaintiff's statement to the mediator.

In February 2016, Plaintiff participated in settlement negotiations with counsel for the Storm defendants. It was during these settlement negotiations that Plaintiff learned from defense counsel about Larson's alleged misrepresentation about the timing of the Storm defendants' $8 million offer and Larson's alleged concealment of the October 2014 and November 2014 offers. On or about March 3, 2016, Plaintiff received the settlement checks for the Storm case, which totaled more than $10 million. Due to an inadvertent error, Plaintiff's name was omitted from the settlement checks. At the request of one of the Storm plaintiffs, Plaintiff did not have the checks reissued, and instead sent the checks directly to the Storm plaintiffs. To date, Larson has paid Plaintiff approximately ten percent (10%) of the attorney fees. Larson "agreed to hold another $425,000" in trust pending resolution of the instant action. (Compl. ¶ 10.)

On May 12, 2016, Plaintiff filed the instant action, asserting two claims for relief for fraud and quantum meruit in a California Superior Court. (Docket No. 1.) On June 13, 2016, Defendants removed this action to the federal district court on the basis of

---

[3] San Diego Superior Court Case No. 37-2014-00297-CU-PO-CTL. (Compl. ¶ 7.)

1  diversity jurisdiction pursuant to 28 U.S.C. §§ 1441(b) and 1446. (*Id.*) On June 27,
2  2016, Defendants concurrently filed their Motion to Strike and Motion for Partial
3  Judgment. (Docket Nos. 6, 7.) On October 24, 2016, Plaintiff filed his Motion to
4  Amend. (Docket No. 24.)

## DISCUSSION

### I.  Defendants' Special Motion to Strike (Anti-SLAPP)

Defendants filed a Special Motion to Strike ("anti-SLAPP Motion") seeking dismissal of Plaintiff's fraud claim pursuant to California Code of Civil Procedure section 425.16.[4] (Docket No. 6.)

#### A.  California's Anti-SLAPP Statute[5]

"California's anti-SLAPP statute authorizes a 'special motion to strike' any 'cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue.' " *Safari Club Int'l v. Rudolph*, No. 14-56236, 2017 WL 192713, at *4 (9th Cir. Jan. 18, 2017) (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). A court evaluating an anti-SLAPP motion first determines whether the defendant has shown the challenged claim "aris[es] from" activity taken "in furtherance" of the defendant's right of petition or free speech. *Ibid.* "If so, the burden shifts to the plaintiff to show 'a [reasonable] probability of prevailing on the challenged claims.' " *Safari Club Int'l, supra,* (quoting *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010)).

As used in section 425.16, "an 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes:"

---

[4] All further statutory references in Section I of this Order are to the California Code of Civil Procedure unless otherwise indicated.

[5] The Court notes that this is a diversity case, and Plaintiff did not contest the applicability of California law. The Court concludes Plaintiff concedes his claims are subject to California Code of Civil Procedure section 425.16.

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law,
> (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,
> (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or
> (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Civ. Proc. Code § 425.16(e).

      Evaluating the merits of an anti-SLAPP motion requires a court to engage in a two-part inquiry. *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013) (citing *Marijanovic v. Gray, York & Duffy,* 137 Cal. App. 4th 1262, 1270 (2006); *see also Coretronic Corp. v. Cozen*, 192 Cal. App. 4th 1381, 1387 (2011). First, the defendant, must make a prima facie showing that each claim against him "aris[es] from" activity taken "in furtherance" of his or her right to petition or free speech. *Safari Club Int'l, supra*, 2017 WL 192713, at *4 (quoting Cal. Civ. Proc. Code § 425.16(b)(1)). If the defendant meets this initial showing, the burden shifts to the plaintiff to demonstrate "a [reasonable] probability of prevailing on the claims." *Id.* at *7 (quoting *Mindys Cosmetics, Inc., supra*, 611 F.3d at 595). If the plaintiff fails to demonstrate a probability of prevailing on a claim, the claim is stricken. *Doe, supra*, at 953 (citing *Navellier v. Sletten,* 29 Cal. 4th 82, 89 (2002)). In conducting its evaluation of an anti-SLAPP motion, a court must "consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* (quoting Cal. Code Civ. Proc. § 425.16(b)(2)).

      The Court finds Defendants failed to establish the requisite initial showing that Plaintiff's fraud claim arose out of protected activity.

1.     "Arising from" Protected Activity

As discussed above, it is the defendant's burden to make an initial showing that one or more claims arise from an act in furtherance of the defendant's constitutional right of petition or free speech in connection with a public issue. *Safari Club Int'l, supra*, 2017 WL 192713, at *4. "[T]he critical consideration is whether the cause of action is *based on* the defendant's protected" conduct. *Id.* (quoting *Navellier, supra*, 29 Cal. 4th at 89). More specifically, "the act underlying" the plaintiff's claim or the act "which forms the basis of" the plaintiff's claim "must *itself* have been an act in furtherance of the right of petition or free speech." *Id.* (quoting *Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 66 (2002) (internal citation omitted)).

In the first-step of the anti-SLAPP analysis, arguments about the merits of the claims are irrelevant. *Coretronic Corp., supra*, 192 Cal. App. 4th at 1388 (citing *Freeman v. Schack*, 154 Cal. App. 4th 719, 733 (2007) (it is irrelevant that defendant might prevail on the merits of the claims where defendant cannot meet the first prong of the analysis)); *see also Birkner v. Lam*, 156 Cal. App. 4th 275, 284 (2007) (affirmative defenses, such as the litigation privilege, are not relevant to the first prong inquiry). "The motion must be denied if the required prima facie showing is not made by the moving defendant." *Id.* (citing *City of Cotati v. Cashman*, 29 Cal. 4th 69, 80 (2002)).

Citing *GeneThera, Inc. v. Troy & Gould Professional*, 171 Cal. App. 4th 901, 908 (2009), Defendants' anti-SLAPP Motion summarily concludes, in a single paragraph, that Plaintiff's fraud claim is based on Defendants' protected activity because "[i]t is already settled that an attorney's settlement communications fall within the "protected activity" of both the Anti-SLAPP statute and the litigation privilege contained in California Civil Code section 47[.]" (Docket No. 6-1 at 5.) Defendants did not specify which provision of section 425.16 applied to their alleged protected activity.

The Court finds the facts in *GeneThera, Inc.* are clearly distinguishable from Plaintiff's action. In *GeneThera, Inc.*, the appellants had sued the respondents (an attorney and his firm) for intentional interference with contractual relations and

negligence based on respondents' communication of a settlement offer to one of the appellants in a separate lawsuit. *Id., supra*, at 905-906. The appellants' claims were based on allegations that the respondents' settlement offer communication was designed to raise a conflict of interest. *Id.* at 906.

The trial court granted the respondents' anti-SLAPP motion after it "expressly found appellants' complaint arose from respondents' protected activity of sending a settlement offer," and appellants failed to show a reasonable probability of success on the merits of their case. *Id.* The California Court of Appeal affirmed the trial court's decision, finding "[a]n attorney's communication *with opposing counsel* on behalf of a client regarding *pending litigation* directly implicates the right to petition and thus is subject to a special motion to strike." *Id.* at 908 (citing *Navellier, supra*, 29 Cal. 4th at 88-89) (emphasis added).

In contrast, Plaintiff's Complaint alleges he and Defendants were contemplating a potential partnership in prosecuting the Storm plaintiffs' claims, which had not yet been filed. (Compl. ¶ 5.) As noted in Plaintiffs' Opposition, Defendants anti-SLAPP Motion did not discuss how Larson's communications about the Storm defendants' settlement offers to Plaintiff amounted to protected activity under any of the circumstances identified in section 425.16(e). Instead, Defendants conflate the two-part analysis by asserting Larson's statements constituted protected activity on the assumption that the statements fell under the litigation privilege pursuant to California Code of Civil Procedure section 47. (Docket No. 6-1 at 5.)

Defendants' assertion that the litigation privilege establishes the prima facie showing of protected activity is misplaced because affirmative defenses are not relevant to determining whether a defendant engaged in protected activity. *See Birkner, supra*, 156 Cal. App. 4th at 284. Further, in *Neville v. Chudacoff*, 160 Cal. App. 4th 1255 (2008), a case cited by Defendants in their Reply, the court found protected activity under section 425.16 is *not* synonymous with activity protected by California's litigation privilege. *Id.* at 1262–63 (citing *Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728,

1  737 (2003)); *see also Garretson v. Post*, 156 Cal. App. 4th 1508, 1517, 1519 (2007)
2  ("Although the interpretation of language in Civil Code section 47 has been used to
3  interpret similar language in the anti-SLAPP statute [citation], we reject the broad
4  conclusion that conduct deemed communicative for purposes of Civil Code section 47
5  automatically qualifies as constitutionally protected speech under section 425.16"). The
6  *Neville* court concluded that whether communications "might be protected by section 47"
7  is relevant to the analysis, but does not resolve whether the communication is a protected
8  activity under 425.16. *Neville, supra*, at 1263.
9      Nevertheless, Defendants maintain in their Reply that "Larson met his initial
10 burden of showing his communications fall within the protection of the Anti-SLAPP
11 statute" because Plaintiff's fraud claim alleges Larson "misrepresented and concealed
12 settlement offers for purposes of hiring Hart and filing the California lawsuit." (Docket
13 No. 21 at 2.) In other words, Defendants reiterate that their statements amounted to
14 protected activity because they were "settlement communications." (*Id.*) However, the
15 four cases relied upon by Defendants, including *GeneThera, Inc., supra*, discussed above,
16 are similarly distinguishable from Plaintiff's action because they involve settlement
17 communications between *opposing* counsel or *interested* parties. *See Navellier, supra*, 29
18 Cal. 4th at 709 (defendant's activity protected under section 425.16 where plaintiffs
19 alleged: (1) defendant failed to disclose he was secretly not in agreement with the terms
20 of a settlement release, and (2) defendant breached terms of settlement release by filing
21 of counterclaims); *Suarez v. Trigg*, 3 Cal. App. 5th 118, 123 (2016) (opposing party's
22 communications "in the course of settlement negotiations are protected activity within the
23 scope of section 425.16"); *Seltzer v. Barnes*, 182 Cal. App. 4th 953, 961-969 (2010)
24 (attorney's settlement communications to opposing counsel protected activity under
25 section 425.16).
26     In sum, none of the cases cited by Defendants supports their broad conclusion that
27 all communications regarding settlement, regardless of the context in which they were
28 delivered, are protected activity under section 425.16. Indeed, courts in California have

stated that "where a lawsuit involves both protected and unprotected activity, the court looks to the gravamen of the claims to determine if the case is a SLAPP." *Coretronic Corp., supra,* 192 Cal. App. 4th at 1388–89, citing *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP*, 133 Cal. App. 4th 658, 672 (2005). "Determining the gravamen of the claims requires examination of the specific acts of alleged wrongdoing and not just the form of the plaintiff's causes of action." *Id.*, citing *Peregrine, supra,* at 671–673. Additionally, California courts have stated that, where protected conduct "is merely *incidental* to the claims" it "does not fall within the ambit of section 425.16." *Id.*, citing *Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 188 (2003); *Peregrine, supra,* at 672 (emphasis in original).

      Here, Plaintiff's fraud claim alleges Defendants made fraudulent statements to induce him to enter a fee-splitting agreement for the Storm case. (Compl. ¶¶ 5-9.) Although the statements concern settlement offers from the Storm defendants, it is clear from the face of the Complaint that the statements were not "in the course of settlement negotiations." *Suarez, supra,* 3 Cal. App. 5th at 123. It is equally clear that the gravamen of Plaintiff's fraud claim is that Defendants made intentional, material misrepresentations that induced him into entering a fee-splitting agreement, and that he would not have entered into said agreement but for those misrepresentations. That the allegedly fraudulent statements happen to be about settlement communications by the opposing party does not magically convert those statements into protected activity that would shield Defendants from liability for fraud where the statements are not communicated by opposing counsel or an interested party for the purpose of settlement. *See Seltzer, supra,* 182 Cal. App. 4th at 962 (cases construing section 425.16, subdivision (e)(2) hold that "a statement is 'in connection with' litigation under section 425.16, subdivision (e)(2), if it relates to the substantive issues in the litigation and *is directed to persons having some interest in the litigation*") (internal citations omitted) (emphasis added).

Therefore, the Court finds Defendants have failed to establish a prima facie showing that Plaintiff's fraud claim arises out of protected activity as defined by section 425.16.

### 2. Reasonable Probability of Prevailing

The Court need not evaluate whether Plaintiff has demonstrated a reasonable probability of prevailing on the merits of his claim because Defendants have not met their initial burden to demonstrate that their alleged actions constituted protected activity under section 425.16. *See Doe, supra*, 730 F.3d at 953 (citing *Marijanovic v. Gray, York & Duffy*, 137 Cal. App. 4th 1262, 1270 (2006)). Accordingly, Defendants' Special Motion to Strike is **DENIED**.

## II. Defendants' Motion for Partial Judgment on the Pleadings

Defendants next move for Partial Judgment as to Plaintiff's fraud claim pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 7.)

Rule 12(c) provides: "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12. The Ninth Circuit has stated that Rule 12(c) is " 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule." *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, n. 4 (9th Cir. 2011) (citing *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)).

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). In considering a Rule 12(b)(6) motion, the court must "accept as true facts alleged and draw inferences from them in the light most favorable to the plaintiff." *Stacy v. Rederite Otto Danielsen*, 609 F.3d 1033, 1035 (9th Cir. 2010) (citing *Barker v. Riverside Cnty. Office of Educ.*, 584 F.3d 821, 824 (9th Cir. 2009)).

Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly,* 550 U.S. at 556. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In addition, allegations of fraud must be stated with particularity. Fed. R. Civ. P. 9(b). "In order to plead fraud with particularity, the complaint must allege the time, place, and content of the fraudulent representation; conclusory allegations, do not suffice." *Shroyer v. New Cingular Wireless Serv., Inc.*, 622 F.3d 1035, 1042 (9th Cir. 2010) (citing *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (requiring plaintiffs plead who, what, when, where, and how).

Defendants contend that the Court should grant their Motion for Partial Judgment on the grounds that Plaintiff's claim for fraud is barred as a matter of law by California's statutory litigation privilege. The Court finds Plaintiff's fraud claim is not barred by California's litigation privilege and that the Complaint sufficiently alleges facts to state a claim for fraud.

**A.   California Litigation Privilege**

California Civil Code section 47, provides in relevant part that a "privileged publication" is one made:

> (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with

> Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . .

Cal. Code Civ. Proc. § 47(b). The courts have formulated a general rule, finding the litigation privilege:

> [A]pplies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990). The California Supreme Court in *Jacob B. v. Cnty. of Shasta,* 40 Cal. 4th 948, 955 (2007), explained that:

> The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.

*Id.*, citing *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1063 (2006). With this public interest in mind, the courts have broadly defined this litigation privilege to cover any publication that is "required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked." *Id.* (citing *Albertson v. Raboff,* 46 Cal. 2d 378, 381 (1956)). "If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches." *Ibid.*

Whether a communication "has 'some connection or logical relation to the action'" is determined by "the subject matter or context of the misstatement, not the isolated misstatement itself." *Sacramento Brewing Co. v. Desmond, Miller & Desmond,* 75 Cal. App. 4th 1082, 1089–90 (1999) (quoting *Silberg, supra,* 50 Cal. 3d at 212). "If there is no dispute as to the operative facts, the applicability of the litigation privilege is a

question of law. Any doubt about whether the privilege applies is resolved in favor of applying it." *Kashian v. Harriman,* 98 Cal. App. 4th 892, 913 (2002).

Although reviewing courts have interpreted the scope of the litigation privilege broadly, the privilege does not apply in all situations. For example, courts have found that the litigation privilege does not apply where the false statements made were not logically related or connected to the underlying suit. *See Nguyen v. Proton Technology Corp.,* 69 Cal. App. 4th 140, 151 (1999); *LiMandri v. Judkins,* 52 Cal. App. 4th 326, 346 (1997); *Shahvar v. Superior Court,* 25 Cal. App. 4th 653, 657 (1994). The privilege was also not found where application of the privilege did not promote truthfulness in a witnesses' testimony. *Mattco Forge, Inc. v. Arthur Young & Co.,* 5 Cal. App. 4th 392, 404 (1992). Moreover, "[t]he question of whether the litigation privilege should, or should not, apply to particular communications has always depended upon a balancing of the public interests served by the privilege against the important private interests which it sacrifices." *Rothman v. Jackson,* 49 Cal. App. 4th 1134, 1146–47 (1996). Thus, when applying the litigation privilege to specific situations, courts must be mindful of the general purpose of the litigation privilege, and whether applying the privilege will further the stated public interests.

**B.   Analysis**

As set forth above, the litigation privilege:

> [A]pplies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

*Silberg v. Anderson,* 50 Cal. 3d 205, 212 (1990). The parties dispute the existence of the third and fourth elements of the litigation privilege.[6]

---

[6] Although the parties did not brief the issue, the Court questions the existence of the first element, i.e. whether any "judicial or quasi-judicial proceedings" had commenced or

13

"The requirement that the communication be in furtherance of the objects of the litigation is, in essence, simply part of the requirement that the communication be connected with, or have some logical relation to, the action, i.e., that it not be extraneous to the action." *Id.* at 219. A communication falls under the litigation privilege if it is logically related or connected to the underlying litigation. *Id.* at 212. Also known as the "logical relation test":

> the "connection or logical relation" which a communication must bear to litigation in order for the privilege to apply, is a *functional* connection. That is to say, the *communicative* act . . . must function as a necessary or useful step in the litigation process and must serve its purposes. This is a very different thing from saying that the communication's *content* need only be related in some way to the subject matter of the litigation.

*Rothman, supra*, 49 Cal. App. 4th at 1146 (emphasis in original).

Relying solely on *Olsen v. Harbison*, 191 Cal. App. 4th 325 (2010), Defendants broadly assert that the litigation privilege immunizes from tort liability "all communications between attorneys concerning the fee split." (Docket No. 7-1 at 4.) The Court disagrees, and finds the facts in *Olsen* distinguishable from Plaintiff's action.[7]

In *Olsen*, the plaintiff was an attorney who had been retained by Kathleen Klawitter in a separate lawsuit (the "Klawitter action"). *Id., supra*, at 328. The defendant was an attorney whom the plaintiff contacted to associate in as trial counsel in the

---

were imminent at the time of the disputed communications. Additionally, Plaintiff's Opposition raised an argument that Defendants' communications amounted to the illegal conduct of wire fraud because the communications were made from Colorado, "using the telephone and internet mail systems of interstate commerce," and thus Defendants were not entitled to the litigation privilege. (Docket No. 14 at 2-3.) The Court may not consider this argument at this time, as wire fraud was not alleged in Plaintiff's Complaint. As discussed above, in ruling on a Rule 12(c) motion, the Court is limited to review of the factual pleadings in the operative complaint.

[7] The Court also notes *Olsen v. Harbison* is persuasive authority; neither party briefed a California Supreme Court case with facts similar to Plaintiff's case.

Klawitter action. *Id.* According to the plaintiff's complaint, the defendant made "disparaging comments regarding [plaintiff] to Klawitter" (*id.* at 334), which allegedly resulted in Klawitter firing the plaintiff and entering into a new fee agreement with the defendant. *Id.* at 328-329. The plaintiff further alleged that the defendant made various misrepresentations to induce the plaintiff into requesting his association in the case. *Id.* at 332. The Klawitter action ultimately settled for $775,000, of which the plaintiff did not receive any fees. *Id.* at 329.

Subsequently, the *Olsen* plaintiff sued the defendant on number of theories of liability, including fraud, of which the trial court granted summary adjudication after concluding the challenged communications were protected by the litigation privilege. *Id.* The trial court, without identifying the content of the statements, divided the alleged fraudulent communications into two categories: (1) statements made by defendant to Klawitter about plaintiff, and (2) statements made by defendant to plaintiff to induce plaintiff into asking defendant to associate into the case. *Id.* at 332-333.

The trial court first ruled that the defendant's allegedly disparaging communications about the plaintiff to Klawitter were within the litigation privilege. *Id.* Specifically, the trial court found that:

> Application of the litigation privilege in this context promotes the public policy behind the protection by encouraging first and foremost co-counsels' duty of loyalty and complete candor *to the client* which in turn promotes the utmost freedom of access to the courts, and curtailing the propagation of tangential derivative litigation arising from communications seemingly compelled by several ethical rules that guide co-counsel.

*Id.* (emphasis added). Next, the trial court considered the defendant's "alleged false and fraudulent statements that induced [plaintiff] to invite [defendant] into the Klawitter representation, or accompanied the parties negotiation of terms." *Id.* It found that, because the communications were "*intended to serve the necessary purpose of identifying and securing co-counsel able to competently represent Ms. Klawitter* in the pending

action . . . these communications also fall within the bounds of the broad litigation privilege." *Id.* at 333 (emphasis added).

The California Court of Appeal affirmed, finding that the statements were connected to Klawitter's litigation because the conversations between plaintiff and defendant "*occurred in order to provide Klawitter with the best possible representation in her personal injury case,*" and that "[t]he purposes behind the litigation privilege are furthered when the privilege is applied to communications made in this setting." *Id.* at 336 (emphasis added).

Here, assuming the Plaintiff's factual allegations as true, Defendants' made the following fraudulent material misstatements or omissions:

    a) Larson stated the Storm defendants had raised their settlement offer from $5.8 million to $8 million, which was untrue at the time Larson made the statement. (Compl. ¶¶ 5, 7.)

    b) Larson concealed the fact that the Storm defendants had made prior settlement offer of $6.3 million after Plaintiff had been retained in the case. (*Id.* ¶ 8.)

    c) Larson concealed the fact that the Storm defendants had made a settlement offer of $6.8 million after Plaintiff had been retained in the case. (*Id.*)

Although Plaintiff alleges Larson sought his association as counsel in the Storm case to file and prosecute the Storm claims, Plaintiff also alleges that Larson's misrepresentations about facts relevant to the case were made in the context of determining how the fee between them would be split. (Compl. ¶¶ 5-6.) Notably, Plaintiff alleged Larson already had an existing fee agreement with the Storm plaintiffs, and Larson's alleged misrepresentations arose out their discussions on division of the existing fee arrangement. (*Id.*) Thus, unlike in *Olsen*, where the statements between the attorneys were for the purposes of "identifying and securing co-counsel to competently represent" a client, the statements here were delivered for the purposes of negotiating a fee arrangement, presumably after Defendants determined Plaintiff's competency. *Olsen, supra,* 191 Cal. App. 4th at 333.

Furthermore, a reasonable inference may be drawn that Larson's purpose in making the alleged misrepresentations was to secure the most advantageous fee splitting arrangement for himself, rather than "provid[ing] [the Storm plaintiffs] with the best possible representation." *Id.* at 336; *see also Rothman, supra,* 49 Cal. App. 4th at 1146 (emphasis in original) ("the *communicative* act . . . must function as a necessary or useful step in the litigation process and must serve its purposes. This is a very different thing from saying that the communication's *content* need only be related in some way to the subject matter of the litigation.)

Additionally, Defendants' assertions that the litigation privilege should apply to the statements concerning the Storm defendants' settlement offers are not persuasive. The Court must consider the context in which the Defendant's alleged misstatements were delivered, not only "the isolated misstatement itself." *Sacramento Brewing Co., supra,* 75 Cal. App. 4th at 1089–90. In short, conversations between opposing counsel in the context of negotiating a settlement is markedly different from conversations between potential co-counsel in the context of negotiating a fee-splitting agreement. While the former is clearly covered under the litigation privilege, the Court finds Defendants have failed to demonstrate how or why the latter should also fall under the litigation privilege.

As a matter of policy, the Court disagrees that extension of the litigation privilege to Defendants' statements in this context would further the stated purpose of providing "litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." *Jacob B., supra,* 40 Cal. 4th at 955 (2007). To the contrary, such application would appear to hinder these purposes, such as where an attorney allegedly defrauds another attorney *representing the same client* into agreeing to accept a smaller fee, and at the same time attempts to bar the defrauded attorney out of any form of recourse for such fraud by hiding behind the litigation privilege. *See Rothman, supra,* 49 Cal. App. 4th at 1146–47 ("the question of whether the litigation

17

privilege should, or should not, apply to particular communications has always depended upon a balancing of the public interests served by the privilege against the important private interests which it sacrifices.").

In sum, the Court finds the functional context of these communications do not "have some connection or logical relation to the action" to warrant application of the litigation privilege. *Silberg, supra*, 50 Cal. 3d at 212; *see also Rothman, supra*, 49 Cal. App. 4th at 1146. Therefore, Defendants' Motion for Partial Judgment is **DENIED**.

### III. Plaintiff's Motion to Amend

Finally, Plaintiff requests leave to amend his complaint to add two additional defendants to his claim for quantum meruit. (Docket No. 24.) Defendants oppose Plaintiff's Motion on the grounds that the proposed amendments are futile. (Docket No. 25.)

Leave to amend under Rule 15(a)(2) should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). The Ninth Circuit "has noted on several occasions . . . that the Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), . . . by freely granting leave to amend when justice so requires." *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).

Courts consider "undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of the proposed amendment" in deciding whether justice requires granting leave to amend under Rule 15. *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir. 1989) (citing *Foman v. Davis*, 370 U.S. 178, 182 (1962)). Although each factor may warrant consideration, "prejudice to the opposing party . . . carries the greatest weight." *Eminence Capital*, 316 F.3d at 1052. None of these factors weigh against granting leave.

Accordingly, Plaintiff's request for leave to amend is **GRANTED**.

## CONCLUSION

For the reasons set forth above, Defendants' Special Motion to Strike (Anti-SLAPP) and Motion for Partial Judgment on the Pleadings are **DENIED**. Plaintiff's Motion to Amend is **GRANTED**. Plaintiff's need not file a new amended complaint, the Proposed First Amended Complaint, attached as Exhibit A to his Motion, shall be filed *nunc pro tunc* to the date of this Order. Defendants shall file an answer or otherwise respond to the First Amended Complaint in accordance with the Federal Rules of Civil Procedure and Civil Local Rules.

**IT IS SO ORDERED.**

DATED: February __, 2017

HON. ROGER T. BENITEZ
United States District Judge