William R. Fuhrman SBN 58751
LAW OFFICE OF WILLIAM R. FUHRMAN
527 Encinitas Blvd., Suite 202
Encinitas, CA 92024
Tel.   (760) 479-2525
Fax   (760) 697-1318

Attorney for Plaintiff
Hoyt Hart

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HART,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>SCOTT R. LARSON; SCOTT R. LARSON, P.C.; MARVIN STORM D.V.M.; JO ANN STORM;and DOES 1 through 10, Inclusive;<br><br>　　　　　Defendants. | Case No. 16cv1460-BEN-MDD<br><br>**PROPOSED FIRST AMENDED COMPLAINT FOR DAMAGES, ACCOUNTING, and CONSTRUCTIVE TRUST** |

1. HOYT HART is and at all times relevant hereto was an attorney at law licensed to practice in the state of California and having his principal office located in San Diego County.

2. SCOTT R. LARSON is and at all times relevant hereto was an attorney licensed to practice in Colorado, having his principal office located in Denver, Colorado. Plaintiff is informed and believes and based thereon alleges that SCOTT R. LARSON practices through his professional corporation SCOTT R. LARSON P.C. Defendants SCOTT R. LARSON and SCOTT R. LARSON P.C. are hereinafter referred to as LARSON. MARVIN STORM D.V.M. and JO ANN STORM, hereinafter "the STORMS", are residents of the state of Colorado.

1

3. At all times mentioned herein, each of the defendants, including the factitiously named defendants, was the servant, agent, partner, assistant, or employee of each of the remaining defendants and in doing the things herein alleged was acting within the course and scope of such relationship, though not necessarily within the scope of their individual licensure.

4. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, Inclusive, and therefore sue these defendants by such fictitious names. Plaintiff will amend this complaint to allege the true names and capacities when such have been ascertained.

5. On or about August 2014, LARSON contacted HART to request local counsel assistance with an injury case arising in California but whose plaintiffs, the STORMS, were residents of Colorado. LARSON stated that the case involved a substantial brain injury (hereinafter the "Storm case"), that $5.8 Million had been offered from the latest mediation, and that he needed to file the lawsuit in California to effectively prosecute the Storm claims. HART and LARSON agreed that HART would file the lawsuit in San Diego Superior Court and work as California counsel on behalf of the STORMS in consideration for Forty Percent (40%) of the attorney fees attributable to an award or settlement obtained in excess of $5.8 Million, based on the contingency fee provided for in LARSON'S contingency fee agreement with the STORMS. Before that arrangement could be documented, LARSON telephoned HART again the next day and stated that the defendants had just then raised their offer to $8 Million, and that plaintiffs would accept $10 Million.

6. LARSON intended HART rely on these representations in order to change the attorney fee agreement between them in his favor by limiting HART to a smaller

fraction of any settlement or result. Based on these representations, HART agreed to act as California counsel and file the lawsuit on behalf of the Storm plaintiffs in consideration of receipt of Forty Five (45%) of the attorneys fees attributable to an award or settlement obtained in excess of $8 Million, based on the contingency fee provided for in LARSON'S contingent fee agreement fee agreement with the STORMS. Plaintiff is informed and believes and based thereon alleges that the STORMS approved LARSON'S association of HART in writing. HART, having no reason to distrust LARSON, reasonably relied upon said representations and thereafter did the following:

-Filed case No.37-2014-00297xx-CU-PO-CTL in San Diego Superior Court;

- Litigated the Storm case for more than 18 months, making all court appearances;

-Took dozens of percipient witness depositions and expert depositions in multiple counties;

-Engaged in multiple mediation sessions;

All of HART'S efforts ultimately led to a successful settlement for the Storm plaintiffs in an amount exceeding $10 Million.

7.   The representation that in August 2014 defendants had offered $8 Million was untrue and LARSON knew it was untrue when he made it. Thereafter, unbeknownst to HART, in October 2014, defendants in the Storm case offered LARSON $6.3 Million to settle the case. In November 2014, defendants in the Storm case offered LARSON $6.8 Million to settle the case. LARSON intentionally concealed from HART the offers made in October and November 2014 so as to maintain the deception that $8 Million had already been offered. Since LARSON exclusively communicated with defendants' insurer, HART could not have reasonably discovered the deception sooner than February 2016 when, by necessity, he became directly involved in settlement negotiations with defense counsel while LARSON was on vacation in Mexico.

8.   On May 18, 2015, at a mediation in LARSON'S Denver office, the defendants

in the Storm case increased their offer to $8 Million. HART complained to the mediator, retired judge Joe Hilberman, in front of LARSON and Dr. Marvin Storm, that the defendant, who had proposed the mediation, was offering no more than had been offered nine months earlier. Neither LARSON or Dr. Storm corrected HART'S assertion or mentioned the prior settlement offers of $6.3 Million and $6.8 Million. HART did not know the concealed truth about these prior settlement offers. LARSON intended to deceive HART by concealing these facts in order to limit HART to a small fraction of the attorneys fees above $8 Million even though his work had substantially contributed to raising the offers from *$5.8 Million*.

9. By misrepresenting that $8 Million was "on the table", and adding that the clients would accept $10 Million, LARSON led HART to believe that the legal work on the Storm case was essentially Eighty Percent (80%) completed. The truth was that with only $5.8 Million on the table, and the client wanting $10 Million, the Storm case would, and did, involve substantially more work. Had HART known the truth, he would not have agreed to modify the original fee agreement with LARSON. HART did not learn the truth about the defendant's settlement offers until late February 2016, when the truth was ultimately revealed by defendants' legal counsel.

10. On or about March 3, 2016, HART obtained the settlement checks totaling more than $10 Million from defense counsel in Los Angeles. HART'S name had been inadvertently omitted from the settlement checks. At the request of Marvin Storm that HART not take the time to have the checks re-issued, thereby delaying receipt by STORMS, HART sent the settlement checks directly to the STORMS. Thereafter, LARSON paid HART approximately 10% of the purported $3 + Million attorney fee, and agreed to hold another $425,000.00 in trust pending resolution of the dispute set forth herein, while refusing to voluntarily pay HART any part of the $425,000 and refusing to pay

HART more than $425,000. LARSON has failed and refused, however, to provide HART a copy of the LARSON/Storm retainer agreement, thereby concealing information necessary to determine the correct share of attorneys fees owed HART.

## FIRST CAUSE OF ACTION

### (FRAUD)

### (Plaintiff against Larson)

11. Plaintiff incorporates by reference the allegations contained in paragraphs 1-10, and each and every part thereof with the same force and effect as though set out at length herein.

12. HART'S reliance on LARSON'S misrepresentation and concealment, as set forth above, was substantial factor in causing harm in that HART was induced to agree to a lower portion of the fee by LARSON'S misrepresentation and prevented by LARSON'S concealment of subsequent settlement offers from discovering the original fraud until after the harm was done.

13. As a direct and proximate result of LARSON'S misrepresentation and concealment, HART has been damaged in that he has been limited to a mere 10% of a multi-million Dollar fee, when his contribution to the clients' result was far more substantial.

14. LARSON'S conduct as set forth herein was fraudulent and malicious entitling HART to an award of punitive and exemplary damages.

## SECOND CAUSE OF ACTION

### (QUANTUM MERUIT)

### (Plaintiff against All Defendants)

15. Plaintiff incorporates by reference the allegations contained in paragraphs 1-14, and each and every part thereof with the same force and effect as though set out at length herein.

16. At the request of LARSON, on behalf of the STORMS, HART prepared, filed and served the complaint in case No.37-2014-00297xx-CU-PO-CTL in San Diego Superior Court, made all court appearances to litigate the Storm case for more than 18 months, involving dozens of discovery responses, percipient witness depositions, expert depositions in multiple counties, and multiple mediation sessions, ultimately leading to a successful settlement for an amount exceeding $10 Million.

17. Following the $10 Million-plus settlement, and notwithstanding his substantial work on the Storm case, LARSON insisted upon limiting HART to 10% of the more than $3 Million attorneys fees and keeping 90% for himself and discounting the fee charged to the Storms by more than $322,000.00. By fraudulent misrepresentation and concealment, as set forth above, LARSON has unjustly enriched himself, and the Storms, at the expense of HART. LARSON is not admitted to practice law in California and was not admitted pro hac vice for the Storm case and therefore may not legally earn *any* fee for a case litigated in California. The reasonable value of the services provided by HART exceeds $1.5 Million.

18. By reason of the fraudulent and unlicensed manner in which LARSON obtained 90% of the attorneys fees generated by the Storms' California litigation, LARSON and the STORMS have no legal or equitable right, claim, or interest therein, but instead LARSON and his agent(s) and the STORMS are involuntary trustees holding said funds property in constructive trust for HART with a duty to convey some or all to HART forthwith.

19. The amount of money due from LARSON and the STORMS to HART is unknown and cannot be ascertained without the LARSON/Storm retainer agreement and an accounting of the receipts and disbursements of the Storm settlement. HART has demanded such documented accounting from LARSON and payment of the amount due, but LARSON has failed and refused, and continues to refuse such accounting and to pay the amount due HART.

///

///

**WHEREFORE,** Plaintiff prays as follows:

1. For a documented accounting of the receipts and disbursements of the Storm settlement;
2. For a declaration that LARSON, and his agents, and the Storms, hold the funds attributable to the Storm case in constructive trust for HART;
3. For special damages according to proof at time of trial;
4. For general damages according to proof at time of trial;
5. For punitive and exemplary damages;
6. For costs of suit incurred herein; and
7. For such other and further relief as the court may deem just and proper.

DATED: 10/05/2016

By: /s/ William R. Fuhrman
William R. Fuhrman
Attorney for Plaintiff

## VERIFICATION

I, Hoyt Hart, am the plaintiff in the above-entitled action. I have read the foregoing **COMPLAINT FOR DAMAGES, ACCOUNTING, and CONSTRUCTIVE TRUST** and know the contents thereof. The same is true of my own knowledge except as to those matters which are therein alleged on information and belief, and as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of September, 2016, at San Diego, California.

*Hoyt C. Hart II*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HOYT HART, | ) | Case No. 16CV1460-BEN-MDD |
| Plaintiff, | ) ) | **DECLARATION OF SERVICE** |
| v. | ) ) | |
| SCOTT R. LARSON; SCOTT R. LARSON, P.C., | ) ) ) | |
| Defendants. | ) ) | |

The undersigned declares under penalty of perjury that I am over the age of eighteen years and am not a party to this action; that I served Roger C. Haerr, Esq., LAW OFFICE OF ROGER C. HAERR, 600 West Broadway, Suite 700, San Diego, CA 92101-3372, with the following documents: **NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT TO ADD DEFENDANTS; PROPOSED ORDER ON MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT; PROPOSED FIRST AMENDED COMPLAINT FOR DAMAGES, ACCOUNTING, AND CONSTRUCTIVE TRUST,** in the following manner: By leaving copies at the dwelling house, usual place of abode, or usual place of business of the person served in the presence of a competent member of the household or a person apparently in charge of his office or place of business, at least 18 years of age, who was informed of the general nature of the papers, and thereafter mailing (by first-class mail, postage prepaid) copies to the person served at the place where the copies were left.

Executed on October 7, 2016, at Encinitas, California.

William R. Fuhrman, Esq.

F:\Bill's Doc's\1999\008 - Larson\Fed Ct Pleadings\NoticeOfMotionToAmend.wpd