# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HART,<br><br>    Plaintiff,<br><br>v.<br><br>SCOTT R. LARSON; SCOTT R. LARSON, P.C.; MARVIN STORM; JO ANN STORM; DOES 1-10, inclusive,<br><br>    Defendants. | Case No.: 3:16-cv-01460-BEN-MDD<br><br>**ORDER DENYING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Before the Court is the motion to dismiss filed by Defendants Marvin Storm and Jo Ann Storm. (Docket No. 32.) The motion is fully briefed. The Court finds the motion suitable for determination on the papers without oral argument, pursuant to Civil Local Rule 7.1.d.1. For the reasons set forth below, Defendants' motion is **DENIED**.

## BACKGROUND[1]

Defendants Marvin Storm and Jo Ann Storm are residents of Colorado. (Docket No. 29, First Amended Complaint ("FAC") ¶ 5.) Defendant Scott R. Larson, P.C. is a

---

[1] The following overview of facts are drawn from the allegations of Plaintiff's First Amended Complaint, which the Court assumes are true for purposes of evaluating Defendants' motion to dismiss. The Court is not making findings of fact.

1

Colorado professional corporation operated by Defendant Scott R. Larson (collectively referred to as "Larson"), an attorney licensed to practice in Colorado. (*Id.*) Plaintiff Hoyt Hart ("Hart") is an attorney who works and is licensed to practice in California. (*Id.* ¶ 1.)

Sometime prior to August 2014, the Storms retained Larson to represent them in a case involving a "substantial brain injury" that occurred in California. (*Id.* ¶ 5.) Subsequently, in or about August 2014, Larson contacted Hart by telephone "to request local counsel assistance" with the Storms' case. (*Id.*) Larson represented that in the last mediation, the defendants in the Storms' case ("the Storm defendants") had offered $5.8 million, but that filing a lawsuit in California was necessary to "effectively prosecute the Storm claims." (*Id.*)

Hart and Larson agreed that Hart would "file the lawsuit in San Diego Superior Court and work as California counsel on behalf of the [Storms]." (*Id.* ¶ 5.) They also agreed that Hart would receive, as compensation for his services, 40 percent of "the attorney fees attributable to an award or settlement obtained in excess of $5.8 million, based on the contingency fee" agreement between Larson and the Storms. (*Id.*) However, the day after this conversation, Larson telephoned Hart and told him that the Storm defendants "had just then raised their [settlement] offer to $8 million, and that [the Storms] would accept $10 million" to settle their case. (*Id.*)

Based on these representations, Hart agreed to modify the original fee splitting agreement. Instead of forty 40 percent of the attorney fees obtained in excess of $5.8 million, Hart would receive 45 percent of the attorney fees obtained in excess of $8 million "based on the contingency fee provided for" in Larson's contingency fee agreement with the Storms. (*Id.* ¶ 6.) Hart alleges that the Storms approved of Larson's association with Hart "in writing." (*Id.*) Thereafter, Hart filed the Storms' case[2] and spent over eighteen (18) months litigating it, including making all court appearances,

---

[2] San Diego Superior Court Case No. 37-2014-00297-CU-PO-CTL. (FAC. ¶ 6.)

taking dozens of percipient witness and expert witness depositions, and engaging in multiple mediation sessions. (*Id.*)

On May 18, 2015, Hart attended a mediation with Larson and Marvin Storm in Larson's Denver office. (*Id.* ¶ 8.) During the mediation, one of the Storm defendants offered $8 million to settle the case, and Hart complained aloud to the mediator that the Storm defendant "was offering no more than had been offered nine months earlier." (*Id.* ¶ 8.) Neither Larson nor Marvin Storm corrected Hart's statement to the mediator. (*Id.*) Hart first learned about Larson's misrepresentations about the settlement offers in February 2016 from counsel for the Storm defendants. (*Id.* ¶ 9.)

Hart's efforts led to a successful settlement for the Storms in excess of $10 million. (*Id.* ¶ 10.) On or about March 3, 2016, Hart received the settlement checks for the Storms' case. (*Id.*) Due to an inadvertent error, Hart's name was omitted from the settlement checks. (*Id.*) At Marvin Storm's request, Hart did not have the checks reissued, and instead sent the checks directly to the Storms. Subsequently, Larson paid Hart "approximately 10% of the purported $3 + Million attorney fee, and agreed to hold another $425,000" in trust pending resolution of the instant action. (*Id.* ¶ 10.) Larson allegedly refused to pay any additional fees above $425,000.

**PROCEDURAL HISTORY**

On May 12, 2016, Hart filed his initial Complaint against Larson asserting two state-law claims for fraud and quantum meruit in a California Superior Court. (Docket No. 1.) On June 13, 2016, Larson removed the action to the federal district court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441(b) and 1446. (*Id.*) On June 27, 2016, Larson concurrently filed a special motion to strike and a motion for partial judgment on the pleadings. (Docket Nos. 6, 7.) While Larson's motions were pending, Hart moved to amend his Complaint, which sought to add the Storms as defendants under the quantam meruit claim. (Docket No. 24.) On February 7, 2017, this Court denied both of Larson's motions and granted Hart's motion, and ordered the Clerk of the Court to file the FAC *nunc pro tunc* to the date of the Court's Order. (Docket No. 28.) Hart

3

served the Storms with the FAC on February 28, 2017. (Docket No. 33.) Instead of filing an answer, the Storms filed the instant motion to dismiss Hart's state-law quantum meruit claim against them pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556. "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Zixiang Li v. Kerry*, 710 F.3d 995, 999 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**DISCUSSION**

A.  Conflict of Laws Analysis

A federal district court sitting in diversity applies the conflict of law rules of the forum state to determine whether the law of the forum state, or some other law, should govern the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). In California, courts apply a three-part governmental interest test. *In re Nucorp Energy Sec. Litig.,* 661 F. Supp. 1403, 1412 (S.D. Cal. 1987) (citing *Hurtado v. Super. Ct.,* 11 Cal. 3d 574, 579-80); *see also Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000). "This choice of law analysis carries a presumption that California law applies and that the proponent of the foreign state law bears the burden of showing a compelling reason justifying displacement of California law." *Rasidescu v. Midland Credit Mgmt.,*

*Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007) (citing *Marsh v. Burrell,* 805 F. Supp. 1493, 1496 (N.D. Cal. 1992)).

"First, the court must determine whether there is in fact a conflict between the competing jurisdictions since 'there is obviously no problem where the laws of the two states are identical.'" *In re Nucorp,* 661 F. Supp. at 1412 (quoting *Hurtado,* 11 Cal. 3d at 580). If a conflict exists, the court must then "determine whether each jurisdiction has a legitimate interest in the application of its law[s] and underlying policy." *Id.* at 1412. "If both jurisdictions have a legitimate interest in the application of their conflicting laws, the court should apply the law[s] of the state whose interest would be the more impaired if its law[s] were not applied." *Id.* at 1412. "When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law." *Rasidescu*, 496 F. Supp. 2d at 1159 (S.D. Cal. 2007) (quoting *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir. 2003) (internal quotation marks omitted).

Here, neither party disputes that California law applies to Hart's quantum meruit claim. Therefore, the Court shall apply California law. *Homedics*, 315 F.3d at 1138.

B. <u>Motion to Dismiss</u>

The Storms argue that Hart's quantum meruit allegations against them are insufficient to state a viable claim and warrant dismissal without leave to amend. The Court disagrees.

"Quantum meruit" is a Latin phrase that means "'as much as he deserves,' and is based on the idea that someone should get paid for beneficial goods or services which he or she bestows on another." *Maglica v. Maglica*, 66 Cal. App. 4th 442, 445-46 (1998) (citations omitted). In the absence of a contract, a plaintiff may still recover under a quantum meruit theory of recovery for "the reasonable value of the services rendered" that directly benefitted the defendant. *Id.* at 449 (quoting *Palmer v. Gregg*, 65 Cal. 2d 657, 660 (1967)) (internal quotation marks omitted). The underlying idea behind allowing quantum meruit claims "is the law's distaste for unjust enrichment. If one has

5

received a benefit which one may not justly retain, one should 'restore the aggrieved party to his [or her] former position by return of the *thing* or its *equivalent* in money.'" *Id.* at 449 (citing 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 91, p. 122.) (emphasis in original); *see also In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) ("Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant.").

A quantum meruit claim "is based *not* on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation." *In re De Laurentiis*, 963 F.2d at 1272 (emphasis in original). To state a claim for recovery under a quantum meruit theory, a plaintiff must allege that "he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Ochs v. PacifiCare of Cal.*, 115 Cal. App. 4th 782, 794 (2004) (citing *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002)).

Generally, "[w]hen parties have an actual contract covering a subject, a court cannot – not even under the guise of equity jurisprudence – substitute the court's own concepts of fairness regarding that subject in place of the parties' own contract." *DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1131 (S.D. Cal. 2016) (citing *Hedging Concepts, Inc. v. First All. Mortg. Co.*, 41 Cal. App. 4th 1410, 1420 (1996)). "However, California law provides an exception to this rule. '[R]estitution may be awarded in lieu of breach of contract damages when the parties had an express contract, but it was procured by fraud or is unenforceable or ineffective for some reason.'" *Id.* at 1131 (quoting *McBride v. Boughton*, 123 Cal. App. 4th 379, 388 (2004)).

The Storms contend that prevailing California authority conclusively precludes Hart's quantum meruit claim against them because the FAC "admits" that: "(1) the Storms did not hire Hart; (2) the Storms have no financial arrangement with Hart; (3) the

underlying contingency fee is between the Storms and Larson, not Hart; (4) Hart's only agreement for a fee is with Larson; (5) the Storms already paid, and Larson already received, the entire contingency fee due from the Storms; and (6) Hart was paid by Larson." (Docket No. 32-1, Storms' Mot. at 2.) The Storms further assert that, based on this authority, in order for Hart to meet his pleading burden he must allege at a minimum that: 1) the Storms asked him to work for them, 2) the Storms had a financial agreement with him, and 3) the Storms had an understanding or expectation that they would pay him. (Storms' Mot. at 4-9.) The Court finds each of the three cases on which they primarily rely distinguishable from the facts in this case.

       1.     *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453 (2004)

First, in *Huskinson*, the California Supreme Court was not faced with a situation similar to Hart's, or even between an attorney seeking recovery in quantum meruit from a client. There, the plaintiff law firm ("Huskinson") referred a client to the defendant attorney and law firm (collectively, "Wolf"). *Huskinson*, 32 Cal. 4th at 456. Wolf took responsibility for prosecuting the client's action, but Huskinson paid for the medical expert's fees and performed 20 hours of legal services for the client. *Id.* In exchange for the referral, Huskinson and Wolf orally agreed that Huskinson would receive 25 percent of any attorney fees recovered. *Id.* However, after judgment was entered in the client's favor and Wolf received their attorney fees, Wolf failed to pay Huskinson its portion of the fees in accordance with their oral agreement. *Id.* at 456-57. Subsequently, Huskinson sued Wolf for, *inter alia*, breach of contract, unjust enrichment, and recovery in quantum meruit. *Id.* at 457.

The trial court denied Huskinson's breach of contract claim after finding the oral fee-sharing agreement was unenforceable because it was not disclosed to the client and the client's written consent was not obtained. *Id.* Nevertheless, the trial court found Huskinson was entitled to compensation for its unjust enrichment claim for the amount it would have received under the unenforceable fee-sharing; alternatively, it found Huskinson was entitled to compensation for its quantum meruit claim for the amount of

7

its legal services and costs it rendered on the client's behalf. *Id.* The California Court of Appeal reversed the unjust enrichment award because the fee-sharing agreement violated Rule 2-200 of the California Rules of Professional Conduct (hereinafter "Rule 2-200"),[3] and found that the quantum meruit award was improper to the extent that it consisted of fees for legal work. *Id.*

Huskinson appealed, and the California Supreme Court granted its petition for review of the quantum meruit issue. *Id.* After considering the purpose of Rule 2-200 and whether a quantum meruit award would undermine compliance with it, the *Huskinson* court concluded that, notwithstanding Huskinson's preclusion from recovering on its fee-sharing agreement with Wolf, it could still recover from Wolf the reasonable value of the services it rendered on the client's behalf. *Id.* at 464. It found its conclusion consistent with California law "holding or otherwise recognizing that attorneys may recover from their clients the reasonable value of their legal services when their fee contracts or compensation agreements are found to be invalid or unenforceable for other reasons." *Id.* at 461.

The Storms appear to rely on *Huskinson* to demonstrate that "the [California] Supreme Court emphasized that its decision in no way increases the attorney fees paid or owed by the client to the attorneys." (Storms' Mot. at 6.) But *Huskinson*'s language is more narrowly tailored, stating: "we emphasize that our decision in no way increases the attorney fees paid or owed by the client *in such a situation*[,]" i.e. where a client has not provided his or her written consent to a fee sharing agreement between two or more attorneys or firms. *Huskinson*, 32 Cal. 4th at 456 (emphasis added). Here, Hart's FAC alleges that the Storms' provided written approval of Larson's association with Hart.

---

[3] Rule 2-200 of the California Rules of Professional Conduct provides in relevant part that a member of the California State Bar "shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless . . . [t]he client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division[.]"

8

(FAC ¶ 6.) For this reason, at least at the motion to dismiss stage, Hart's case is factually distinguishable from *Huskinson*. Thus, the Court is not convinced that *Huskinson* is germane to its analysis of the Storms' motion to dismiss.

    2.    *Strong v. Beydoun*, 166 Cal. App. 4th 1398 (2008)

Similarly, in *Strong*, two attorneys entered into a fee-sharing arrangement without obtaining the clients' written consent. *Strong*, 166 Cal. App. 4th at 1401-02. The plaintiff attorney ("Strong") alleged that the defendant attorney ("Suojanen") represented that he would obtain the clients' signatures approving the fee-sharing agreement, but never obtained their signatures. *Id.* After Strong had worked on the clients' case for over a year, Suojanen terminated Strong's services allegedly without cause and without payment for the services she provided. *Id.* at 1401. Subsequently, Strong brought, *inter alia*, quantum meruit, unjust enrichment and declaratory relief claims against Suojanen and the clients. *Id.* The trial court sustained without leave to amend the clients' demurrers to each of the quantum meruit, unjust enrichment and declaratory relief claims against them on the grounds that the plaintiff attorney could not maintain her claims against them for failure to comply with Rule 2-200. *Id.* at 1401-02.

On appeal, the California Court of Appeal recognized that "[n]o reported California case has answered [the] question" of whether an attorney may plead claims against a client to recover the reasonable value of her services, notwithstanding the lack of an enforceable fee-sharing agreement. *Id.* at 1404. It considered that "Rule 2-200 was adopted for the protection of the client, who is a 'consumer [ ] of the legal expertise possessed by the attorney.'" *Id.* at 1404 (quoting *Margolin v. Shemaria*, 85 Cal. App. 4th 891, 901 (2000)). The client's consumer protection derives from the attorney's written disclosure and his or her written consent. *Id.* at 1404 (citing *Margolin* at 902). Based on this premise, it determined that because the facts alleged indicated that Strong's "financial arrangement was with Suojanen" and her complaint did not allege that the clients "asked her to work for them or that they agreed to pay her," it did not make sense "to allow an attorney *whose only connection to the client is through an unenforceable*

*fee-sharing agreement* to recover fees directly from that client." *Id.* at 1404 (emphasis added). In light of these circumstances, it concluded that "Strong's recourse [wa]s against Suojanen." *Id.*

Again, the Court finds the facts in the present case distinguishable. Like the *Huskinson* court, the *Strong* court expressed concern that Rule 2-200's purpose to provide consumer protection for a client would be undermined if claims to enforce the unenforceable fee-sharing agreements were allowed to proceed. Here, the FAC alleges that the Storms provided Larson with written approval of Larson's association with Hart. (FAC ¶ 6.) This fact, which the Court must assume is true, *Ashcroft*, 556 U.S. at 678, allows it to draw a reasonable inference that Rule 2-200's requirements that the association be disclosed to the Storms and that they provided their consent in writing were met, *Zixiang Li*, 710 F.3d at 999 (citation omitted). Therefore, the Court remains unconvinced that *Strong* is suitable for analysis of this case.

3. *Olsen v. Harbison*, 191 Cal. App. 4th 325 (2010)

Finally, in *Olsen*, the plaintiff attorney ("Olsen") signed a contingency fee agreement with his client ("Klawitter), before associating in the more experienced defendant attorney ("Harbison"). *Olsen*, 191 Cal. App. 4th at 328. Olsen and Harbison reached an agreement over division of the attorney fees and, in accordance with Rule 2-200, Klawitter provided written approval of their fee division agreement. *Id.* at 329. A few weeks later, Klawitter fired Olsen and entered into a new, separate fee agreement with Harbison. *Id.* Klawitter's case ultimately settled and Olsen did not receive any attorney fees from the settlement award. *Id.*

Olsen sued Harbison under a number of theories, including quantum meruit, breach of contract, and constructive trust/unjust enrichment. *Id.* at 330. The trial court sustained Harbison's demurrer to the quantam meruit claim because Olsen's complaint did not contain allegations that would indicate that Olsen would or did perform services for Harbison, rather than Klawitter. *Id.* It also granted Harbison's motion for summary adjudication of the breach of contract claim, finding that any obligation to Olsen under

10

the fee-sharing agreement was extinguished when Klawitter discharged him as her attorney. *Id.* As to the constructive trust/unjust enrichment claim, the trial court granted Harbison's judgment on the pleadings, and concluded that his only remedy lay in an quantum meruit action against Klawitter. *Id.* at 330, 343-44.

On appeal, the California Court of Appeal determined that the trial court's rulings on each of these issues were proper. With respect to the quantum meruit claim, the court found *Huskinson* and *Strong* inapplicable to Olsen's case because, unlike in those cases, Klawitter had a direct relationship with both attorneys by virtue of her consent to their association and their fee division. *Id.* at 332 ("Here, however, the client had a direct relationship with both plaintiff and defendant: she agreed to the association and consented to the fee division. *Huskinson* and *Strong* involve situations when no such consent has been obtained, and they are therefore inapplicable."). Based on the fact that Olsen had a written retainer agreement with Klawitter, brought Harbison into the case with Klawitter's consent, and was fired by Klawitter, the court found there was no basis for his quantum meruit claim against Harbison and opined that Olsen may have been entitled to quantum meruit from Klawitter. *Id.* ("Under these circumstances, plaintiff might be entitled to quantum meruit – from the client. Instead, he sought to recover the value of services rendered from defendant. There is no basis for such a claim[.]").

Here, Hart alleges the Storms provided written consent to his and Larson's association for representation of their case. (FAC ¶ 6.) Hart also alleges that he performed numerous legal services on the Storms' behalf, and that Marvin was present at a mediation in which Hart represented the Storms' interests against the Storm defendants. (*Id.* ¶¶ 6, 8.) The Court is not persuaded that *Olsen* requires that Hart was further required to allege that he had a direct agreement with the Storms. In fact, *Olsen* indicates California's amenability to recovery in quantum meruit against a client who has benefitted but not paid for services received from an attorney. To find otherwise would ignore the principle and purpose of a quantum meruit claim, particularly in the context of a contract that is alleged to have been procured by fraud.

Additionally, the Ninth Circuit has recognized that "the vast majority of California cases do not require that a plaintiff expect compensation from the defendant himself in order to prove a quantum meruit claim." *In re De Laurentiis*, 963 F.2d at 1273. "Compensation may be 'expected' only in the sense that the services rendered must not have been gratuitous." *Id.* (citing as examples *Haggerty v. Warner,* 115 Cal. App. 2d 468 (1953) (no requirement of intent to compensate); *Carey v. Cusack,* 245 Cal. App. 2d 57 (1966) (same); *Wescoatt v. Meeker,* 63 Cal. App. 2d 618, 626 (presumption of recovery sustained if "it can reasonably be inferred that pecuniary compensation was in the view of the parties," but not if "the services were intended to be gratuitous.")). The Ninth Circuit further recognized that California treatises do not suggest that "an expectation of payment by the defendant himself is required." *In re De Laurentiis*, 963 F.2d at 1273 (citing B. Witkin, *Summary of California Law: Contracts* § 113 (1987) (expectation of compensation requirement limited to determining whether services were intended to be gratuitous); 55 Cal. Jur. 3d Restitution § 49 (1980)).

As stated above, to state a claim for recovery under a quantum meruit theory, a plaintiff must allege that "he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Ochs*, 115 Cal. App. 4th at 794 (2004) (citing *Day,* 98 Cal. App. 4th at 248). Taking the facts in the FAC as true, the Court can infer Hart alleges that he performed legal services on behalf of the Storms pursuant to their implied request for his services (via their written approval of his association with Larson) which were intended to and in fact did benefit the Storms. (FAC ¶ 6.) Hart further alleges he has not been fully paid for those services. (*See generally* FAC.) The Court finds these allegations are sufficient to survive a motion to dismiss.

///

///

///

///

12

3:16-cv-01460-BEN-MDD

## CONCLUSION

In sum, he Court finds the FAC states sufficient facts to state a plausible claim against the Storms. Therefore, the Storms' motion to dismiss for failure to state a claim is **DENIED**.

**IT IS SO ORDERED.**

Dated: October 2, 2017

_____
Hon. Roger T. Benitez
United States District Judge