UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HART,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>SCOTT R. LARSON, SCOTT R. LARSON, P.C., DOES 1-10, inclusive,<br><br>　　　　　　　　　Defendants. | Case No.: 3:16-cv-01460-BEN-MDD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This action arises primarily out of a contingency fee dispute between Plaintiff Hoyt Hart ("Plaintiff" or "Hart") and Defendants Scott R. Larson and Scott R. Larson, P.C., based on the legal services Plaintiff provided on behalf of Defendants Marvin Storm and Jo Ann Storm. On June 13, 2016, Plaintiff's lawsuit was removed from the Superior Court of California to this Court. (Docket No. 1.) Now pending is Plaintiff's motion for partial summary judgment for his fraud and quantum meruit claims.[1] (Docket No. 47.) Defendants filed a single joint brief in opposition to Plaintiff's motion. (Docket No. 51.)

---

[1] Plaintiff's First Amended Complaint ("FAC") asserts a claim for fraud against Larson, and claims for quantum meruit against all Defendants. (Docket No. 29.) According to Plaintiff's motion, the only genuine issue of material fact that remains is Plaintiff's entitlement to, and the amount of, punitive damages for his fraud claim. (*See* Mot. at p. 33.)

1

As will be explained in further detail below, because the Court finds genuine disputes of material fact exist, Plaintiff's motion for partial summary judgment is **DENIED**.

## BACKGROUND[2]

Defendant Scott R. Larson, P.C. is a Colorado professional corporation operated by Defendant Scott R. Larson (collectively referred to as "Larson"), an attorney licensed to practice in Colorado. Plaintiff Hoyt Hart is an attorney who works and is licensed to practice in California. Defendants Marvin Storm and Jo Ann Storm are residents of Colorado, and "longtime friends" of Larson. (Docket No. 51-5, Declaration of Scott R. Larson ("Larson Decl.") ¶ 3; Docket No. 51-9, Declaration of Marvin Storm ("Storm Decl.") ¶ 2.)

In April 2013, the Storms retained Larson to represent them in a personal injury case following an accident at the Lawrence Welk Desert Oasis ("Welk") in Cathedral City, California, which resulted in Mrs. Storm sustaining a severe brain injury.[3] (Storm Decl. ¶¶ 2, 4; Larson Decl. ¶ 3.) Between April 2013 and August 2014, Larson prepared the Storms' case for settlement or trial, including engaging in discussions and meetings with Welk and Liberty Mutual, Welk's insurer (together "Storm Defendants"). (Larson Decl. ¶ 4.)

On August 13, 2014, the Storms, Welk, and Liberty Mutual participated in an unsuccessful mediation in Denver, Colorado.[4] (*Id.* ¶ 5.) On August 28, 2014, Larson

---

[2] The following overview of the facts is drawn from the relevant admissible evidence submitted by the parties; the Court's rulings on the parties' respective evidentiary objections are discussed later in this Order. *See* Objections, *supra*. Additionally, the Court's reference to certain pieces of evidence is not an indication that it is the only pertinent evidence relied on or considered by the Court. The Court has reviewed and considered all of the relevant admissible evidence submitted by the parties.

[3] Defendant Marvin Storm is Defendant Jo Ann Storm's husband and legal conservator. (Storm Decl. ¶ 3.)

[4] Individuals appearing at the August 13, 2014 mediation on behalf of the Storm Defendants included: Sarah Kaufman, a senior claims adjuster for Liberty Mutual;

contacted Plaintiff by telephone to discuss the Storms' case and his association as California counsel. (Docket No. 48-2, Declaration of Hoyt Hart ("Hart Decl.") ¶ 2.) Plaintiff agreed to accept 40% of the attorney fees generated by an award or settlement in excess of $5.8 million, the Storm defendants' most recent settlement offer. (*Id.*) The following day, August 29, 2014, Larson telephoned and emailed Plaintiff to advise that the Storm Defendants "had just increased their offer to $8 million." (*Id.* ¶ 3, Ex. 1.) Larson suggested, and Plaintiff agreed, to modify the contingency fee agreement such that Plaintiff would receive 45% of the attorney fees generated by any award or settlement in excess of $8 million. (*Id.*) The Storms "consent[ed] to Mr. Larson sharing his fee with Mr. Hart." (Storm Decl. ¶ 5.)

On September 3, 2014, Plaintiff filed the Storms' complaint in the Superior Court of California, County of San Diego.[5] (Hart Decl. ¶ 3, Ex. 2.) In October 2014, the Storm Defendants offered $6.3 million to settle the Storms' case. (Hart Decl. ¶ 4; Kaufman Decl. ¶ 2.) In November 2014, the Storm Defendants offered $6.8 million to settle the Storms' case. (*Id.*) On May 18, 2015, the Storms, Welk, and Liberty Mutual participated in another unsuccessful mediation. (Hart Decl. ¶ 4.)

In November 2015, the Storm Defendants filed and served a California Code of Civil Procedure ("CCP") § 998 offer of $10 million. (Hart Decl. ¶ 5; Kaufman Decl. ¶ 2.) In December 2015, because the Storms had not accepted the Storm Defendants' CCP § 998 offer, Plaintiff "requested assignment to a neutral department for settlement." (Hart Decl. ¶ 5.) The Storms' case was assigned to the Honorable Kevin A. Enright, who held multiple settlement conference sessions before the parties finally agreed to settlement, which was not finalized until February 2016. (*Id.* ¶ 6.) During these settlement conference sessions, Plaintiff learned from the Storm Defendants' attorney,

---

Christopher Faenza, counsel for Welk; and Hank Filar, a Welk representative. (Larson Decl. ¶ 5; Mot. at p. 34, Declaration of Sarah Kaufman ("Kaufman Decl.") ¶ 2.)

[5] San Diego Superior Court Case No. 37-2014-00297-CU-PO-CTL.

Christopher Faenza, that the Storm Defendants had not communicated an $8 million settlement offer in August 2014. (*Id.*)

Due to an inadvertent error, Plaintiff's name was omitted from the settlement checks. (*Id.* ¶ 7.) At Marvin Storm's request, Plaintiff did not have the checks reissued, and instead sent the checks directly to the Storms. (*Id.*) To date, Plaintiff has received $328,467.83, which represents the undisputed attorney fees and costs for his legal services. (*Id.* ¶ 8.) Plaintiff alleges he is owed at least an additional $425,000 in attorney fees that is being held in trust by counsel for Larson pending the results of this lawsuit (plus the interest accrued in the trust account). After communications regarding the disputed amount of attorney fees failed, Plaintiff filed this action and now moves for partial summary judgment.

## DISCUSSION

### A. Conflict of Laws Analysis

As this Court has discussed in earlier orders in this case, a federal district court sitting in diversity applies the conflict of law rules of the forum state to determine whether the law of the forum state, or some other law, should govern the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). In California, courts apply a three-part governmental interest test. *In re Nucorp Energy Sec. Litig.,* 661 F. Supp. 1403, 1412 (S.D. Cal. 1987) (citing *Hurtado v. Super. Ct.,* 11 Cal. 3d 574, 579-80); *see also Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000). "This choice of law analysis carries a presumption that California law applies and that the proponent of the foreign state law bears the burden of showing a compelling reason justifying displacement of California law." *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007) (citing *Marsh v. Burrell,* 805 F. Supp. 1493, 1496 (N.D. Cal. 1992)).

"First, the court must determine whether there is in fact a conflict between the competing jurisdictions since 'there is obviously no problem where the laws of the two states are identical.'" *In re Nucorp,* 661 F. Supp. at 1412 (quoting *Hurtado,* 11 Cal. 3d at

580). If a conflict exists, the court must then "determine whether each jurisdiction has a legitimate interest in the application of its law[s] and underlying policy." *Id.* at 1412. "If both jurisdictions have a legitimate interest in the application of their conflicting laws, the court should apply the law[s] of the state whose interest would be the more impaired if its law[s] were not applied." *Id.* at 1412. "When neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law." *Rasidescu*, 496 F. Supp. 2d at 1159 (S.D. Cal. 2007) (quoting *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir. 2003) (internal quotation marks omitted).

Here, neither party disputes that California law applies to Hart's fraud and quantum meruit claims.[6] Accordingly, the Court shall apply California law. *Homedics*, 315 F.3d at 1138.

## B. Motion for Partial Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In considering a summary judgment
///

---

[6] The Court notes that one of the declarations Defendants filed in support of their opposition to Plaintiff's motion for partial summary judgment indicates the declarant would waive mediation confidentiality pursuant to Colorado law. (*See* Docket No. 51-10, Declaration of the Honorable William G. Meyer ¶ 7.) However, Defendants' objections and arguments regarding mediation confidentiality cite solely to the Evidence Code sections pursuant to California law, and the opposition in general solely discusses application of California substantive law. The Court concludes Defendants do not dispute California law applies.

5

motion, the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his or her favor. *Id*. at 255.

The moving party bears the initial burden of showing there are no genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). It can do so by negating an essential element of the non-moving party's case, or by showing that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case, and on which the party will bear the burden of proof at trial.[7] *Id.* The burden then shifts to the non-moving party to show that there is a genuine issue for trial. *Id.* As a general rule, the "mere existence of a scintilla of evidence" will be insufficient to raise a genuine issue of material fact. *Anderson*, 477 U.S. at 252. There must be evidence on which the jury could reasonably find for the non-moving party. *Id.*

    1)    <u>Fraud</u>

In essence, the FAC alleges that on August 29, 2018, Larson intentionally misrepresented that the Storm Defendants had made an $8 million settlement offer, which induced him to agreeing to accept a lower amount of attorney fees. The FAC further alleges that, after August 29, 2018, Larson intentionally concealed/omitted the fact that the Storm Defendants made settlement offers of $6.3 million and $6.8 million, which would have exposed Larson's misrepresentation regarding the $8 million settlement offer.

In California, to prevail on a tort claim for fraud, a plaintiff must prove the following elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior*

---

[7] In support of his motion, Plaintiff filed a Request for Judicial Notice ("RJN"), which Defendants do not oppose. (Docket No. 47-3, "Pl.'s RJN.") The Court has reviewed the documents and finds them appropriate for judicial notice. Therefore, Plaintiff's RJN is **GRANTED**.

6

*Court*, 12 Cal. 4th 631, 638 (1996) (quoting 5 Witkin, Summ. of Cal. Law: Torts § 676 (9th ed. 1988)) (additional citations omitted); *see also* Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers").

Plaintiff's motion for summary judgment of this claim must be denied because there are genuine issues of material fact as to Larson's knowledge of the alleged misrepresentations and Larson's intent to defraud Plaintiff.[8] First, as to Larson's knowledge of the alleged misrepresentations, Plaintiff has presented evidence that the Storm Defendants "did not offer, communicate, authorize, or otherwise indicate any willingness to pay $8 Million to settle the [Storms'] case in August 2014," and that they subsequently made settlement offers of $6.3 million on October 1, 2014 and $6.8 million on November 25, 2014. (Kaufman Decl. ¶¶ 2-3.) Plaintiff also presented evidence that Larson did not advise him of the Storm Defendants' $6.3 million and $6.8 million settlement offers. (Hart Decl. ¶ 4.)

In response, Larson submitted evidence that in August 2014, but prior to contacting Plaintiff, Larson was advised that the Storm Defendants were "willing to pay $8 million to settle the case." (Larson Dec. ¶ 6.) Notwithstanding the self-serving nature of both Plaintiff's and Larson's declarations, construing the evidence in a light most favorable to Larson, the Court finds a triable issue of material fact as to whether Larson knew, or could not have been unaware, that the Storm Defendants did not offer $8 million in August 2014. With respect to Larson's knowledge of the alleged concealment, the Court finds Plaintiff has not met his burden of proving this element.

Second, and similarly, Plaintiff has not met his evidentiary burden to prove Larson's intent to defraud Plaintiff. Plaintiff's motion relies solely on his own legal conclusions and request for the Court to draw inferences from the aforementioned

---

[8] Because the Court finds genuine issues of material fact exist as to these two elements, it declines to make a determination on the remaining elements.

7

evidence that Larson intended to defraud him. (Mot. at pp. 7-8.) In any event, the Court finds that even if Plaintiff had established Larson's intent to defraud, Larson submitted sufficient evidence to create a triable issue of material fact. As a result, summary judgment for this claim is inappropriate, and therefore **DENIED**.

   2)   Quantum Meruit

"Quantum meruit refers to the well-established principle that 'the law implies a promise to pay for services performed under circumstances disclosing that they were not gratuitously rendered.'" *Huskinson & Brown, LLP v. Wolf*, 32 Cal. 4th 453, 458 (2004) (quoting *Long v. Rumsey*, 12 Cal. 2d 334, 342 (1938)). Thus, in the absence of a contract, California law permits a plaintiff to recover under a quantum meruit theory of recovery for "the reasonable value of the services rendered" that directly benefitted the defendant. *Maglica v. Maglica*, 66 Cal. App. 4th 442, 449 (1998) (quoting *Palmer v. Gregg*, 65 Cal. 2d 657, 660 (1967)) (internal quotation marks omitted); *see also In re De Laurentiis Entm't Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) ("Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefiting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant.").

A quantum meruit claim "is based *not* on the intention of the parties, but rather on the provision and receipt of benefits and the injustice that would result to the party providing those benefits absent compensation." *In re De Laurentiis*, 963 F.2d at 1272 (emphasis in original). To prove entitlement to recovery in quantum meruit, a plaintiff must show that "he or she was acting pursuant to either an express or implied request for services from the defendant and that the services rendered were intended to and did benefit the defendant." *Ochs v. PacifiCare of Cal.*, 115 Cal. App. 4th 782, 794 (2004) (citing *Day v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 248 (2002)).

Plaintiff argues he is entitled to summary judgment for this claim against all Defendants because it is undisputed that he performed legal services at their request and to their benefit, for a reasonable value of "not less than $3 Million." (Mot. at p. 11.) To

8

support his argument, Plaintiff cites to Defendants' answers to the FAC. Specifically, Plaintiff identified the following admissions in the Defendants' respective answers:

> - Larson contacted Plaintiff concerning an injury case arising in California but whose plaintiffs were residents of Colorado.
>
> - Plaintiff filed suit and documents in San Diego Superior Court, made court appearances, attended depositions, and engaged in mediation.
>
> - $324,900 was paid to Plaintiff, that $425,000 was placed in trust pending resolution of this dispute.
>
> - Plaintiff filed suit, appeared in court, and engaged in discovery and mediation.

(Pl.'s RJN, Ex. A. at pp. 2-3; Ex. D at pp. 2-3.) Plaintiff also cites to Larson's affirmative defense indicating that the Storms provided written consent to the fee-splitting agreement (Pl.'s RJN, Ex. A. at p. 3.), as well as the Storms' affirmative defense that Larson had their written consent to the fee-splitting agreement (Pl.'s RJN, Ex. D. at p. 3).

Defendants' sparse opposition regarding Plaintiff's quantum meruit claim solely argues that a dispute of material fact exists as to whether the Storms requested Plaintiff's legal services.[9] (Opp'n at p. 21.) To support this argument, Defendants cite to Marvin Storm's declaration, wherein he asserts he and Jo Ann Storm hired Larson to represent them in their case against the Storm Defendants, and "had no involvement in the hiring of Hoyt Hart as California counsel." (Storm Decl. ¶¶ 2, 5.) However, in the same breath, the Storms admit they "consented to Mr. Larson sharing his fee with Mr. Hart." (*Id.* ¶ 5.) Even construing the evidence in a light most favorable to Defendants, the Court finds

---

[9] The Court declines to address the parties' briefing regarding their disagreement over whether Larson is entitled to the $425,000 in fees presently held in trust by Larson's attorney based on his failure to obtain pro hac vice admission during the litigation of the Storms' case because it has no bearing on the Court's analysis of Plaintiff's quantum meruit claim.

9

3:16-cv-01460-BEN-MDD

Defendants have failed to rebut Plaintiff's evidence that they expressly and/or impliedly requested Plaintiff's legal services. It is further undisputed that Plaintiff's legal services were intended and actually provided benefit to Defendants, *i.e.*, contributing to successful settlement of the Storms' case.

Nevertheless, the Court finds Plaintiff has not met his evidentiary burden to establish entitlement to summary judgment of this claim because he has not presented sufficient evidence of the reasonable value of his legal services. Notably, it is undisputed that Plaintiff has received $324,900 for the legal services he provided in the Storm case. (Hart Dec. § 8; Larson Decl. § 17.) Thus, Plaintiff's quantum meruit claims necessarily require proof that he is entitled to receive more than the fees he has already been paid. But other than his own declaration, the only evidence Plaintiff submitted to support the reasonable value of his services is the "settlement distribution accounting," which Larson sent to him via email. (Hart Decl. ¶ 7, Ex. 4.) Although the Court finds evidence that Larson and the Storms' agreed to an attorney fee amount of $3 million relevant to the inquiry of what constitutes a "reasonable value of the services rendered," it finds the issue would be more appropriately decided at trial. *Maglica*, 66 Cal. App. 4th at 449.

Accordingly, Plaintiff's motion for summary judgment of this claim is also **DENIED**.[10]

**C.  Objections**

Finally, the Court addresses the evidentiary objections raised by both parties. The Court's rulings are without prejudice to re-raising the same evidentiary objections at trial.

1)  Plaintiff's Objections

Plaintiff contends portions of the Larson Decl. should not be considered on hearsay grounds. (Docket No. 53-2 at p. 2.) Theses objections are **OVERRULED** under the

---

[10] Because the Court denies Plaintiff's motion for partial summary judgment, Defendants' request to file a second opposition pursuant to Federal Rule of Civil Procedure 56(d) is **DENIED**.

"effect on the listener" exception to the hearsay rule. Plaintiff further objects based on lack of foundation and/or personal knowledge to the portion of the Larson Decl. that states: "After Mr. Hart agreed to act as local counsel, he was aware of all settlement offers made by the Welk defendants in the Storm matter." (*Id.*) In a motion for summary judgment, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). The Court agrees that this statement lacks foundation and therefore **SUSTAINS** this objection.

Last, Plaintiff objects to the portion of the Storm Decl. that states: "After the mediation but still during August 2014, I rejected an offer from Welk that it would pay $8 million to settle our case if my wife and I were willing to accept that amount" on the grounds that "the statement depends upon and implies a hearsay statement of an unknown speaker." (Docket No. 53-2 at p. 3.) This is not a proper hearsay objection and is therefore **OVERRULED**.

2) <u>Defendants' Objections</u>

Defendants raise numerous objections to the evidence Plaintiff submitted in support of both his motion and reply briefings. (Docket Nos. 51-2, 55.) These objections are primarily asserted under claims of privilege under California law, which apply to this diversity action seeking relief exclusively under California law.[11] The Court discusses the claimed privileges and corresponding objections in turn.[12]

---

[11] *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 835 F.3d 1155, 1158 (9th Cir. 2016) ("Pursuant to Federal Rule of Evidence 501, federal common law generally governs claims of privilege. . . . 'But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.'") (internal citation omitted).

[12] The Court declines ruling on Defendants' objections to evidence that is not relevant to the Court's determination of the instant motion. Specifically, the Court

11

3:16-cv-01460-BEN-MDD

### i. Mediation Confidentiality

"In order to encourage the candor necessary to a successful mediation, the [California] Legislature has broadly provided for the confidentiality of things spoken or written in connection with a mediation proceeding." *Cassel v. Superior Court*, 51 Cal. 4th 113, 117-18 (2011). Thus, subject to "specified statutory exceptions, neither 'evidence of anything said,' nor any 'writing,' is discoverable or admissible 'in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which . . . testimony can be compelled to be given,' if the statement was made, or the writing was prepared, 'for the purpose of, in the course of, or pursuant to, a mediation[.]'" *Id.* (quoting Cal. Evid. Code, § 1119 subds. (a), (b).) In addition, "'[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential." *Id.* (quoting § 1119(c)).

The California Supreme Court has "repeatedly said that these confidentiality provisions are clear and absolute. Except in rare circumstances, they must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected." *Id.* (citing *Simmons v. Ghaderi*, 44 Cal. 4th 570, 580 (2008); *Fair v. Bakhtiari*, 40 Cal. 4th 189, 194 (2006); *Rojas v. Superior Court*, 33 Cal. 4th 407, 415-416 (2004); *Foxgate Homeowners' Assn. v. Bramalea California, Inc.*, 26 Cal. 4th 1, 13-14, 17 (2001)).

Defendants effectively object to any evidence relating to the Storm Defendants' settlement offers or settlement discussions on mediation confidentiality grounds. But only writings and communications made "for the purpose of, in the course of, or pursuant to, a mediation" or mediation consultation are protected. Cal. Evid. Code, § 1119. In other words, settlement offers relayed outside the course of mediation proceedings are not protected by mediation confidentiality. "A mediation ends—by operation of law—

---

declines to rule on objection numbers: 4-5, 10, 12, 14-16, 18-24, 26, 28-31, 32-33 (Docket No. 51-2), and objection numbers: 1-7 (Docket No. 55).

when the parties execute a settlement agreement in writing or place it on the record orally, when the mediator or a participant circulates a signed statement stating the mediation is terminated, or when the parties do not communicate with the mediator about the dispute for ten calendar days." *Doublevision Entm't, LLC v. Navigators Specialty Ins. Co.*, No. C-14-02848-WHA, 2015 WL 370111, at *2 (N.D. Cal. Jan. 28, 2015) (citing Cal. Evid. Code § 1125).

Based on the parties' briefings, the Court has identified only two mediations: 1) the mediation conducted on August 13, 2014; and 2) the mediation conducted on May 18, 2015.[13] Regarding the August 13, 2014 mediation, there is no evidence to suggest the Storm litigants communicated with the mediator after August 13, 2014; therefore this mediation "ended" on August 23, 2014. Cal. Evid. Code § 1125. Similarly, as there is no evidence to indicate the Storm litigants communicated with the mediator after May 18, 2015, this mediation "ended" on May 28, 2015. *Id.* As a result, Defendants' objections to statements or writings made outside of these mediations are **OVERRULED**.[14]

As to the remaining objections under this category, Defendants' objections to the portions of the Kaufman Decl. that discuss the settlement amounts offered by the Storm Defendants on August 13, 2014 and May 18, 2015, *i.e.,* during mediation, are **SUSTAINED**. Likewise, Defendants' objections to the Hart Decl.'s discussion of events and statements occurring during the May 18, 2015 mediation are **SUSTAINED**.

///

---

[13] As to the settlement conferences conducted by the Honorable Kevin A. Enright in December 2015, these appear to be excepted from mediation confidentiality. *See* Cal. Evid. Code, § 1117(b)(2) (mediation confidentiality chapter does not apply to "[a] settlement conference pursuant to Rule 3.1380 of the California Rules of Court."); *see also Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1572 (2005) ("[California's] Evidence Code provisions, including those addressing confidentiality, are applicable to all mediation proceedings, except for court-supervised settlement conferences").

[14] Specifically, objection numbers: 6-7, 11, 13. (Docket No. 51-2.)

13

3:16-cv-01460-BEN-MDD

However, the objection to the Kaufman Decl.'s discussion of settlement offers *not* conveyed in August 2014 is **OVERRULED**. As to Defendants' objections to the Hart Decl.'s discussion of Larson's telephone conversations with Plaintiff on August 28, 2014 and August 29, 2014, it is not clear to the Court whether the Storm Defendants' $5.8 and $8 million settlement offers were communicated during the August 13, 2014 mediation. Thus, these objections are also **OVERRULED**.

## ii. Attorney-Client Privilege

California Evidence Code § 954 "confers a privilege on the client 'to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer.'" *Los Angeles Cnty. Bd. of Supervisors v. Superior Court* ("*Los Angeles*"), 2 Cal. 5th 282, 292-93 (2016). A "confidential communication" is "information transmitted between a client and his or her lawyer in the course of that relationship and in confidence by a means which, so far as the client is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship." Cal. Evid. Code § 952.

The attorney-client privilege "does not apply to every single communication transmitted confidentially between lawyer and client." *Los Angeles*, 2 Cal. 5th at 294. "Rather, the heartland of the privilege protects those communications that bear some relationship to the attorney's provision of legal consultation." *Id.* (citing *Roberts v. City of Palmdale*, 5 Cal. 4th 363, 371(1993); *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733 (2009)).

Defendants object to a portion of an email from Larson to Plaintiff (Hart Decl., Ex. 1) to the extent it indicates how much the Storms were willing to accept to settle the case. The Court agrees the information constitutes attorney-client privileged communications and **SUSTAINS** the objection as to this information only.

14

Defendants also object to the "Amended Settlement Sheet" Larson sent to the Storms and Plaintiff (Hart Decl., Ex. 4), which is essentially an accounting or invoice of the distribution of settlement funds. Defendants' objection is **OVERRULED** because it does not contain legal *advice* or bear a relationship to Larson's legal *consultation* to the Storms.[15] *See Los Angeles*, 2 Cal. 5th at 296 ("While a client's fees have some ancillary relationship to legal consultation, an invoice listing amounts of fees is not communicated for the purpose of legal consultation.").

### iii. California Litigation Privilege

California's litigation privilege is codified in California Civil Code § 47, which the Court has previously discussed at length in its *February 3, 2017 Order* denying Larson's motions to dismiss and now incorporates by reference herein. (*See* Docket No. 28 at pp. 11-13.) In short, the litigation privilege serves to immunize a party from tort liability for "privileged publications." *See Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) (California's litigation privilege "immunizes defendants from virtually any tort liability" for privileged communications as defined by California Civil Code § 47); *Feldman v. 1100 Park Lane Assocs.*, 160 Cal. App. 4th 1467, 1486 (2008) ("The litigation privilege 'is generally described as one that precludes liability in tort[.]'") (internal citation omitted). As a result, this is not an appropriate *evidentiary* objection, and therefore each of Defendants' evidentiary objections predicated on the California litigation privilege are **OVERRULED**. Moreover, inasmuch as Defendants attempt to re-assert their immunity from Plaintiff's claims under the California litigation privilege, the Court finds the reasoning in its *February 3, 2017 Order* remains sound, and hereby incorporates by reference. (*See* Docket No. 28 at pp. 13-18.)

---

[15] To the extent Defendants' object on the ground that the information in the document is protected by a "Mutual Confidentiality Agreement," this objection is **OVERRULED** on the grounds that the document does not identify who (if anyone), the settlement funds came from, what case (if any) the funds relate to, etc.

In summary, the Court only sustains Defendants' objections to the following evidence:

- Hart Decl. at p. 3, lines 7-12.
- Hart Decl., Ex. 1, last sentence of the first paragraph of the email.
- Kaufman Decl. at p. 1, paragraph 2 discussing August 13, 2014 and May 18, 2015 settlement offers.
- Kaufman Decl. at p. 1, paragraph 3, second sentence.

## CONCLUSION

For all of the reasons set forth above, Plaintiff's motion for partial summary judgment is **DENIED**.

**IT IS SO ORDERED.**

Dated: June 15, 2018

_____
Hon. Roger T. Benitez
United States District Judge