UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HART,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>SCOTT R. LARSON, SCOTT R. LARSON, P.C., DOES 1-10, inclusive,<br><br>　　　　　　　　　　Defendants. | Case No.: 3:16-cv-01460-BEN-MDD<br><br>**ORDER** |

On August 14, 2018, Defendants Scott R. Larson, Scott R. Larson, P.C.,[1] Marvin Storm, and Jo Ann Storm filed an untimely[2] Motion for an Order Determining Applicable State Law. (Docket No. 69.) Defendants' motion seeks an order "determining that California state law applies to this litigation, specifically with respect to whether communications with Judge William G. Meyer occurring ten calendar days after an August 13, 2014 mediation are admissible at trial." (*Id.* at p. 1.) Plaintiff Hoyt Hart ("Hart") initially opposed Defendants' motion. (Docket No. 70.) On August 20, 2018,

---

[1] The Court shall refer to Defendants Scott R. Larson and Scott R. Larson, P.C., collectively as "Larson."

[2] The Court's Scheduling Order required the parties file all pretrial motions by May 30, 2018. (Docket No. 46 ¶ 4.)

1

the Court held a pretrial conference, during which it heard the parties' oral arguments regarding the instant motion. (Docket No. 72.) Following the pretrial conference, Plaintiff withdrew his opposition to Defendants' motion. (Docket No. 71-1). For the reasons that follow, Defendants' motion is **GRANTED in part, and DENIED in part**.

## BACKGROUND[3]

In April 2013, the Storms retained Larson to represent them in a personal injury case following an accident at the Lawrence Welk Desert Oasis ("Welk") in Cathedral City, California, which resulted in Mrs. Storm sustaining a severe brain injury. Between April 2013 and August 2014, Larson prepared the Storms' case for settlement or trial, including engaging in discussions and meetings with Welk and Liberty Mutual (Welk's insurer).

On August 13, 2014, the Storms, Welk, and Liberty Mutual participated in an unsuccessful mediation in Denver, Colorado, which was conducted by the Honorable William G. Meyer (Ret.). On August 28, 2014 and August 29, 2014, Larson contacted Hart by telephone to discuss the Storms' case and his association as California counsel. On September 3, 2014, Hart filed the Storms' complaint in the Superior Court of California, County of San Diego. The Storms' case finally settled in February 2016. Subsequently, Hart brought this action to resolve a fee dispute between him, Larson, and the Storms.

## RELEVANT PROCEDURAL HISTORY

On June 13, 2016, Plaintiff's lawsuit was removed from the Superior Court of California to this Court. (Docket No. 1.) According to the Court's Scheduling Order, "all discovery . . . shall be completed by all parties by **April 30, 2018**. . . . All subpoenas

---

[3] The factual background in this case is well known to the parties and set forth in detail in the Court's *June 15, 2018 Order Denying Plaintiff's Motion for Partial Summary Judgment*, which it incorporates by reference herein. (*See* Docket No. 63 at pp. 2-4.) The following overview is drawn from the relevant admissible evidence for purposes of resolving the instant motion.

issued for discovery must be returnable on or before the discovery cutoff date." (Docket No. 46 ¶ 3) (emphasis in original.) Nevertheless, on July 26, 2018, over Plaintiff's objection and without the Court's leave, Defendants took Judge Meyer's deposition. (*See* Docket No. 69-1, Declaration of Micaela Banach ("Banach Decl.") ¶ 2, Ex. 1.) Based on Judge Meyer's assertion of mediation privilege pursuant to Colorado state law in response to some of the questions posed during the untimely deposition, Defendants now move for a determination by this Court that: 1) California's mediation confidentiality statutes apply to the August 13, 2014 mediation that occurred in Denver, Colorado, and 2) Judge Meyer's communications on August 28 and 29, 2014 are admissible. In the interests of justice and promoting judicial economy, and because Defendants' motion ultimately affects the admissibility of Judge Meyer's testimony at trial, the Court overrules Plaintiff's objection to resolve this issue. Fed. R. Civ. P. 1.

## DISCUSSION

As this Court has previously discussed, a federal district court sitting in diversity applies the conflict of law rules of the forum state to determine whether the law of the forum state, or some other law, should govern the case. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). In California, courts apply a three-part governmental interest test. *In re Nucorp Energy Sec. Litig.,* 661 F. Supp. 1403, 1412 (S.D. Cal. 1987) (citing *Hurtado v. Super. Ct.,* 11 Cal. 3d 574, 579-80); *see also Abogados v. AT&T, Inc.,* 223 F.3d 932, 934 (9th Cir. 2000). However, where, as here, "neither party identifies a meaningful conflict between California law and the law of another state, California courts apply California law."[4] *Rasidescu v. Midland Credit Mgmt., Inc.*, 496 F. Supp. 2d 1155, 1159 (S.D. Cal. 2007) (quoting *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir. 2003) (internal quotation marks omitted).

---

[4] The Court notes that, throughout the entirety of this litigation, neither party has contested application of California law.

In light of Plaintiff's non-opposition to Defendants' motion, the Court **GRANTS** Defendants' motion inasmuch as it seeks a determination that California's law regarding mediation confidentiality applies to the mediation efforts in the Storms' case in Denver, Colorado. However, inasmuch as Defendants' motion seeks a determination that "communications with Judge William G. Meyer occurring ten calendar days after an August 13, 2014 mediation are admissible at trial," the motion is **DENIED**.

**A.      Mediation Confidentiality Under California Law**

"In order to encourage the candor necessary to a successful mediation, the [California] Legislature has broadly provided for the confidentiality of things spoken or written in connection with a mediation proceeding." *Cassel v. Superior Court*, 51 Cal. 4th 113, 117-18 (2011). "Mediation" is "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." Cal. Evid. Code § 1115(a). "A mediation ends—by operation of law—when the parties execute a settlement agreement in writing or place it on the record orally, when the mediator or a participant circulates a signed statement stating the mediation is terminated, or when the parties do not communicate with the mediator about the dispute for ten calendar days." *Doublevision Entm't, LLC v. Navigators Specialty Ins. Co.*, No. C-14-02848-WHA, 2015 WL 370111, at *2 (N.D. Cal. Jan. 28, 2015) (citing Cal. Evid. Code § 1125).

Subject to "specified statutory exceptions, neither 'evidence of anything said,' nor any 'writing,' is discoverable or admissible 'in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which . . . testimony can be compelled to be given,' if the statement was made, or the writing was prepared, 'for the purpose of, in the course of, or pursuant to, a mediation[.]'" *Cassel*, 51 Cal. 4th at 117-18 (quoting Cal. Evid. Code § 1119 subds. (a), (b)). In addition, "'[a]ll communications, negotiations, or settlement discussions by and between participants in the course of a mediation . . . shall remain confidential." *Id.* (quoting § 1119(c)). The California Supreme Court has "repeatedly said that these confidentiality provisions are clear and

absolute. Except in rare circumstances, they must be strictly applied and do not permit judicially crafted exceptions or limitations, even where competing public policies may be affected." *Id.* (citing *Simmons v. Ghaderi*, 44 Cal. 4th 570, 580 (2008); *Fair v. Bakhtiari*, 40 Cal. 4th 189, 194 (2006); *Rojas v. Superior Court*, 33 Cal. 4th 407, 415-416 (2004); *Foxgate Homeowners' Assn. v. Bramalea California, Inc.*, 26 Cal. 4th 1, 13-14, 17 (2001)).

**B.     Application of California's Mediation Confidentiality**

In essence, Defendants' motion argues that, under California law, Judge Meyer's post-August 23, 2014 communications are *ipso facto* admissible. This is not accurate for two reasons. First, as discussed above, under California law a mediation ends by operation of law when "the parties execute a settlement agreement in writing or place it on the record orally, when the mediator or a participant circulates a signed statement stating the mediation is terminated, or *when the parties do not communicate with the mediator about the dispute for ten calendar days*." *Doublevision Entm't*, 2015 WL 370111, at *2 (citing Cal. Evid. Code § 1125) (emphasis added). Defendants rely on the lack of communication provision, and therefore must demonstrate that none of the parties in the Storms' case communicated with Judge Meyer for ten calendar days following the August 13, 2014 mediation. Defendants have not made this showing.

At the August 20, 2018 pretrial conference, counsel for Defendants represented that the parties to the Storms' case communicated with Judge Meyer on August 28 and 29, 2014, *i.e.*, after the August 13, 2014 mediation. Although the instant motion implies there were no communications between the parties and Judge Meyer between August 13, 2014 and August 28, 2014, this has not been proven by evidence. In light of Defendants' counsel's representation during the pretrial conference, a reasonable inference may be drawn that the Storms' case litigants likely communicated with Judge Meyer in the interim in further efforts to settle their dispute.

Second, even if the Court assumes no communications occurred between the parties to the Storms' case and Judge Meyer for ten days following the August 13, 2014

5

mediation, Judge Meyer's testimony about his communications on August 28 and 29, 2014 would still be subject to California's mediation confidentiality. Defendants' motion states "Judge Meyer had additional discussions on August 28-29, 2014 with the parties *during which he communicated their settlement positions*." (Mot. at p. 2) (emphasis added.) As noted above, California defines a mediation broadly as "a process in which a neutral person or persons facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement." Cal. Evid. Code § 1115(a).

It cannot seriously be argued that Judge Meyer's did not act as a "neutral party" or did not "facilitate communication between the disputants to assist them in reaching a mutually acceptable agreement" during the communications at issue in this motion. Indeed, this point is reinforced by Judge Meyer's July 26, 2018 deposition testimony, which Defendants' submitted in support of their motion. The excerpts provided establish Judge Meyer communicated with Ms. Kaufman and Larson on August 29, 2014 and September 1, 2014, and asserted mediation privilege (albeit under Colorado law) in response to questions regarding the content of their communications. (*See* Banach Decl. ¶ 2, Ex. 1.) Thus, the testimony Defendants' seek to introduce at trial appears to fall squarely under California's mediation confidentiality protection.

Separately, to the extent Defendants argue "statements relating to the August 28-29 communications have already been placed in the public file, *by [Hart] and Sarah Kaufman, on behalf of Welk*, and objections to those statements have been overruled under California law" (Mot. at p. 9), this argument is not persuasive. First, the Court overruled Defendants' objection (under mediation confidentiality) to Hart's supporting declaration regarding Hart and Larson's August 28 and 29, 2014 telephone discussions because "*[b]ased on the parties' briefings* . . . there is no evidence to suggest the Storm litigants communicated with the mediator after August 13, 2014; therefore this mediation 'ended' on August 23, 2014." (Docket No. 63 at pp. 12-14) (emphasis added.)

Defendants' newly presented evidence of post-August 13, 2014 communications between Judge Meyer, Larson, and Ms. Kaufman does not change the Court's conclusion

that Hart's declaration was admissible. Whether Judge Meyer's communications with Ms. Kaufman and Larson on August 28 and 29, 2014 continued the August 13, 2014 mediation or constituted a new mediation, it appears undisputed that Hart and Larson's telephone discussion was not made "for the purpose of, in the course of, or pursuant to, a mediation" of the Storms' case. *See* Cal. Evid. Code, § 1119 (Only writings and communications made "for the purpose of, in the course of, or pursuant to, a mediation" or mediation consultation are protected). Rather, their discussion was with regard to valuation of the Storms' case and negotiating a fee-sharing arrangement based on the most recent settlement offer from the Storm defendants. As a result, even if Hart and Larson's telephone conversation occurred during a continuance of the August 13, 2014 mediation, or a new mediation, it would not be protected by mediation confidentiality.

Second, after sustaining Defendants' objections to Ms. Kaufman's declaration discussing settlement offers made *during* mediation, the Court overruled Defendants' objection "to the Kaufman Decl.'s discussion of settlement offers *not* conveyed in August 2014" because settlement offers *not conveyed* are not writings and communications made "for the purpose of, in the course of, or pursuant to, a mediation." (Docket No. 63 at pp. 12-13) (emphasis added in original.)

In sum, the Court is not persuaded that the testimony Defendants seek to elicit from Judge Meyer is admissible. Therefore, it **DENIES without prejudice** Defendants' motion for an order finding "communications with Judge William G. Meyer occurring ten calendar days after an August 13, 2014 mediation are admissible at trial."

## CONCLUSION

For all of the reasons set forth above, Defendants' motion is **GRANTED in part and DENIED in part without prejudice**.

**IT IS SO ORDERED.**

Dated: August 24, 2018

Hon. Roger T. Benitez
United States District Judge

7

3:16-cv-01460-BEN-MDD