FILED

DEC 05 2019

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY           DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HOYT HART,<br><br>                      Plaintiff,<br><br>v.<br><br>SCOTT R. LARSON, et al.,<br><br>                      Defendants. | Case No.: 3:16-cv-01460-BEN-MDD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL**<br>**[Doc. 147]** |

Pending before the Court is Plaintiff Hoyt Hart's motion for a new trial. [Doc. 147.] The motion is **DENIED**.

## I.   BACKGROUND

This action arose out of an attorneys' fees dispute between Plaintiff Hoyt Hart and Defendants Scott Larson and Scott Larson, P.C.[1] In April 2013, Jo Ann Storm suffered a brain injury while visiting the Welk Resort in Cathedral City, California. Subsequently, the Storms hired their friend and neighbor, Colorado attorney Larson, to sue Welk Resort and its insurer. In August 2014, Larson invited Hoyt Hart to act as California local counsel

---

[1] For ease of reference, this Order refers to Defendants simply as "Larson."

1

on the Storm case. Following settlement of the Storm lawsuit, Plaintiff Hoyt Hart brought a claim for fraud against Larson.[2] Hart alleged that Larson misrepresented the state of settlement negotiations between the Storms and the Storm defendants at the time that he and Larson negotiated how the Storm contingency fee would be split.

The matter was tried by jury from August 13 to August 15, 2019. A seven-person jury unanimously rendered a verdict for Defendants, finding that Larson did not make a false representation of fact to Hart. Doc. 133 at 2. On August 19, 2019, the Court entered judgment against Hart and for Larson in accordance with the jury's verdict. Doc. 136. Following the verdict on August 15, 2019, the Court ordered that all post-trial motions be filed no later than September 4, 2019. *See* Doc. 127. Hart filed his motion for a new trial on September 16, 2019, twelve days after the deadline set by the Court.[3] For the reasons discussed below, Hart's motion is **DENIED**.

## II. DISCUSSION

Hart moves for a new trial based on two of the Court's evidentiary rulings. Under Rule 59, a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). A new trial may not be granted "merely because [the court] might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1175, 1176 (9th Cir. 1990). In support of his motion, Hart contends the Court erred in admitting two categories of evidence: (1) evidence relating to a disciplinary action

---

[2] Hart's other claims were dismissed prior to trial.

[3] In his opposition brief, Larson contends that Hart's motion for a new trial should be denied because it was untimely filed. The Court is not persuaded by that argument, which it previously rejected. *See* Doc. 156 ("Although Hart violated the Court's scheduling order, he filed his Motion for New Trial within the 28 days permitted under Federal Rule of Civil Procedure 59.").

2

brought against him by the State Bar of California and (2) evidence that the IRS asserted tax liens on his assets because of his failure to pay taxes.

**A. Evidence of Hart's False Statement to the State Bar**

Hart argues the Court erred in admitting evidence that the State Bar of California disciplined him for knowingly making a false statement to a State Bar investigator. Hart contends that evidence should have been excluded under both Federal Rules of Evidence 403 and 608(b). The Court disagrees.

The evidence Hart disputes is limited to a single question and answer during defense counsel's cross-examination of Hart. Defense counsel asked, "Is it true or not, in 2002, you admitted you made a misrepresentation to the California State Bar, which under State Bar rules was an act of moral turpitude?" Hart responded, "Yes, seventeen years ago." The inquiry then ended, in compliance with the Court's prior ruling.[4] No other questions were asked regarding the issue, and no extrinsic evidence was admitted regarding Hart's State Bar discipline.

1. <u>FRE 403</u>

Hart contends the Court should have excluded the question under Federal Rule of Evidence 403, which provides that relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. Importantly, "Rule 403 . . . is an extraordinary remedy to be used sparingly because it

---

[4] Notably, the Court set clear limitations on how the evidence was to come in. During trial on August 14, 2019, defense counsel informed the Court outside the presence of the jury that he intended to cross-examine Hart regarding his State Bar disciplinary action because it was relevant to Hart's credibility as a witness. The Court permitted both parties to argue their positions. After considering the question over a recess, the Court ruled that the evidence would come in but that defense counsel could introduce it only by using the precise question the Court provided: "Is it true or not, in 2002, you admitted you made a misrepresentation to the California State Bar, which under State Bar rules was an act of moral turpitude?" The Court ruled that, if Hart answered no, counsel could explore the topic further, but if he answered yes, the inquiry ended. Defense counsel abided by the Court's ruling.

3

permits the trial court to exclude otherwise relevant evidence." *United States v. Mende*, 43 F.3d 1298, 1302 (9th Cir. 1995) (internal quotation marks omitted). Here, evidence of Hart's discipline by the State Bar for an act of moral turpitude is highly probative of his credibility as a witness because, as Larson argues, it bears on his willingness to lie to advance his personal interests. Moreover, contrary to Hart's position, his credibility *was* very much at issue where (1) he brought a fraud claim against Larson, (2) he took the stand to offer his own testimony as evidence on each element of his fraud claim, and (3) the merits of that claim came down to a credibility determination: whether the jury believed his version of events or Larson's. Thus, the Court again finds that the evidence, limited to the fact of Hart's State Bar misconduct, is and was highly probative of his credibility.

The Court also did not err by finding the high probative value of Hart's misconduct outweighed the danger of unfair prejudice. For evidence to be excluded under FRE 403, "the danger of prejudice must not merely outweigh the probative value of the evidence, but *substantially* outweigh it." *Mende*, 34 F.3d at 1302. Further, "[r]elevant evidence is inherently prejudicial," and thus, "it is only *unfair* prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000) (quoting 1972 Advisory Committee Notes to FRE 403) (emphasis added). The fact that Hart made his false statement seventeen years prior to trial does lower the evidence's probative value to some degree but not so much so that it is outweighed by a substantial danger of unfair prejudice. Moreover, the jurors knew the misconduct occurred seventeen years prior and thus, had the opportunity to consider how this impacted the evidence's value.

2. FRE 608(b)

Hart next argues that "State Bar discipline records are inadmissible to impeach an attorney's credibility because admission of such evidence is precluded by FRE 608(b), which prohibits extrinsic evidence to prove specific misconduct for the purpose of attacking credibility." Doc. 147-1 at 3. The Court does not have any qualms about Hart's statement, which has no application to this case because no records or other extrinsic

4

evidence relating to Hart's State Bar disciplinary history were ever admitted into evidence. Instead, as discussed previously, Hart was asked whether he was disciplined by the State Bar for a particular act of dishonesty, and the inquiry ended there. Under FRE 608(b), the Court properly exercised its discretion in permitting that question to be asked and answered. *See* Fed R. Evid. 608(b) ("Extrinsic evidence is not admissible to prove specific instances of a witness's conduct or to attack or support the witness's character for truthfulness. <u>But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness . . .</u>") (emphasis added). A false statement to the State Bar, deemed an act of "moral turpitude," is certainly probative of Hart's "character for truthfulness or untruthfulness," and thus, it is admissible under FRE 608(b).

**B. Evidence of IRS Tax Liens on Hart's Assets**

Hart next argues the Court erred by admitting evidence of the IRS tax liens on his assets related to his failure to pay taxes from 2007 to 2014. Hart again contends that evidence should have been excluded under both FRE 403 and FRE 608(b). Again, the Court does not agree.

1. <u>FRE 403</u>

As already discussed, FRE 403 requires the Court to balance the probative value of evidence against the substantial risk of unfair prejudice. Here, the evidence of IRS tax liens on Hart's assets is relevant because, according to defense counsel's theory, it goes to Hart's motive for fabricating claims against Larson. In addition, that evidence tends to show Hart has a specific and immediate financial need to pay his taxes in order to remove the tax liens. "[T]he Ninth Circuit has acknowledged that evidence of financial difficulties is admissible if the evidence shows more than poverty." *United States v. Love*, 2011 WL 1897677, at *2 (S.D. Cal. May 17, 2011) (citing *Jackson*, 882 F.2d 1444, 1449 (9th Cir. 1999)). Here, the evidence shows more than poverty because it shows motive. In terms of any "substantial danger of unfair prejudice," Hart does not identify how the evidence presented that risk to such a degree that it outweighed the evidence's

probative value. Accordingly, the Court is not persuaded that the evidence was inadmissible under FRE 403.

2. <u>FRE 608(b)</u>

Hart contends that FRE 608(b) also applied to prohibit the Court from admitting the IRS tax lien evidence. FRE 608(b), however, does not apply here, where Larson did not introduce the evidence to either (1) prove specific instances of Hart's misconduct or (2) to attack his "character for truthfulness." Fed. R. Evid. 608(b). In other words, the IRS tax lien evidence is not character evidence; instead, Larson introduced it to show Hart's *motivation* for fabricating the fraud claim against Larson: to obtain money to relieve himself of the IRS tax liens. As Hart, himself concedes, "the amendment clearly strengthens [FRE 608(b)'s] prohibition on extrinsic evidence in cases where the proponent's *sole purpose* is to impeach the witness's character for veracity." Doc. 147-1 at 15 (emphasis in original). Here, however, Larson's "sole purpose" was not to impeach Hart's character for veracity; it was to show motive. Accordingly, the Court did not err.

### III. CONCLUSION

For the previous reasons, Hart's motion for a new trial is **DENIED**.

**IT IS SO ORDERED.**

Date: November 5, 2019

HON. ROGER T. BENITEZ
United States District Judge